UNITED STATES of America,
Plaintiff-Appellee,

v.

Don STOVALL and Robert Harlon
"Frosty" Winter,
Defendants-Appellants.

No. 86–1453.

United States Court of Appeals,
Fifth Circuit.

Aug. 12, 1987.

G. David Westfall, John H. Hagler, Dallas, Tex., for Stovall.

Henry D. Gabriel, Loyola Law School, New Orleans, La. (court appointed), for Winter.

Marvin Collins, U.S. Atty., Dallas, Tex., Joseph C. Wyderko, Washington, D.C., for plaintiff-appellee.

Before WILLIAMS and HILL, Circuit Judges, and MENTZ[*], District Judge.

ROBERT MADDEN HILL, Circuit Judge:

In this appeal Robert Winter and Don Stovall challenge their individual sentences arising out of their convictions in a credit association fraud scheme. For the reasons stated below, we affirm Winter's sentences in part and vacate in part, and we affirm Stovall's sentence.

I.

Up until January 1984 Robert "Frosty" Winter was the vice-president in charge of the Blacklands Production Credit Association (Blacklands) in Kaufman, Texas. Blacklands is a cooperative financial institution that provides short and intermediate term, agricultural loans to farmers and ranchers. Blacklands is regulated and funded by the Federal Intermediate Credit Bank of Texas (FICB). Both Blacklands and FICB are part of the Farm Credit Administration.

Beginning in 1980 Winter began approving improper loans, for nonagricultural purposes, and in some instances, accepting benefits directly out of the loans or indirectly from loan recipients. Following Winter's resignation in January 1984, an internal investigation into the Kaufman office's accounts uncovered Winter's fraudulent activities. Specifically, the investigation revealed that loan documents listed collateral that did not exist and misstated the purposes of the loans. The investigation also uncovered the fact that Winter personally benefited from several of the loan transactions.

Winter was subsequently indicted on nineteen counts of improperly making, recording, and/or participating in loan transactions, all violations of federal law. Below we briefly outline the pertinent loan transactions that were the basis of Winter's ultimate conviction on sixteen counts.[1]

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

[1] We do not discuss the factual setting pertinent to counts six, seven, and eight since Winter was

In March 1981 Winter authorized a $10,000 loan to Billy R. Ables, a local farmer. On the loan documents Winter listed the reason for the loan as the purchase of "a few more cows." Ables in fact used the $10,000 to purchase land for Winter on which Winter made monthly mortgage payments and built a home. Several months later Winter used $9,000 of his personal funds to make a payment on Ables' loan balance at Blacklands. In crediting the $9,000 to Ables' balance, Winter stated on the loan receipt that the money came from the sale of Ables' cattle.

Winter was charged with and convicted of three offenses arising out of the Ables transaction: (1) recording a false statement when he made the loan, a violation of 18 U.S.C. § 1006 (count one); misapplying funds by loaning money to Ables for nonagricultural purposes, a violation of 18 U.S.C. § 657 (count two); and (3) recording a false statement when he credited Ables' account with his own funds, a violation of 18 U.S.C. § 1006 (count three).

The next improper loan transaction carried out by Winter involved a local framing contractor, Randall Johnson. Johnson was having financial difficulties and needed $20,000 for payroll expenses. Johnson was referred to Winter by Floyd Kirby, a friend and later codefendant of Winter's. Winter agreed to give Johnson the money. On the loan documents Winter wrote that the loan was for an equipment purchase and that the loan was secured by collateral. In fact, the loan proceeds were used to pay Johnson's payroll and no collateral existed.

Winter was charged with and convicted of two offenses arising out of the Johnson transaction: (1) recording a false statement when he made the loan, a violation of 18 U.S.C. § 1006 (count four), and (2) misapplying funds for nonagricultural purposes, a violation of 18 U.S.C. § 657 (count five).

The third pertinent loan transaction involved Winter, Donald B. Stovall, and a cutting horse "Doc Sunshine." Stovall was a local construction and carpeting business-man who also dabbled in training cutting horses and raising cattle. In March 1983 Stovall decided to purchase Doc Sunshine from his then owner Don Simpson. Simpson had recently brought Doc Sunshine for $20,000, but Stovall agreed to buy the horse for $200,000 if Simpson insured Doc for the purchase price. To carry out the sale Stovall enlisted Winter's aid. Winter authorized a $50,000 loan to Stovall. Stovall transferred this money to Simpson along with a promissory note for the balance of the purchase price. The note was executed by both Stovall and Winter. In return Simpson conveyed Doc Sunshine to Stovall and Winter. Doc Sunshine soon died and the insurance proceeds were split between Simpson ($127,000), Stovall ($66,000), and Winter ($7,000).

Winter was charged with and convicted of one offense arising out of the Stovall transaction: receiving benefits from a loan, a violation of 18 U.S.C. § 1006 (count twelve). Stovall was also indicted for and convicted of aiding and abetting Winter's section 1006 violation.

Winter again made an improper loan in February 1983 to a local businessman Gerald Howell. Howell was a tractor and car salesman who also raised cattle on the side. Howell had previously borrowed over $40,000 from Blacklands for his ranching business. Winter approached Howell with a real estate speculation venture in late February. The two men agreed to use a Blacklands' loan to Howell as a mutual down payment on a five-acre tract of land. Winter authorized the loan of $5,000, stating it was "for operating costs." Title to the tract was conveyed to both Howell and Winter. They later sold the tract at a profit of approximately $1,000 an acre.

Winter was charged with and convicted of two offenses arising out of the Howell transaction: (1) misapplying loan proceeds for nonagricultural purposes, a violation of 18 U.S.C. § 657 (count thirteen), and (2)

acquitted on the charges contained in counts six and seven and since count eight was dismissed by the district court. We also do not describe the factual situations underlying counts nine, ten, eleven, and seventeen since Winter does not challenge his convictions on these counts on appeal.

receiving benefits from a loan, a violation of 18 U.S.C. § 1006 (count fourteen).[2]

Winter next extended credit to John Wood, a Plano, Texas, fireman who also farmed and ran cattle near Kaufman. Winter authorized a $12,000 loan to Wood, listing as the purpose of the loan "the purchase of cattle." Wood actually used the loan proceeds to purchase a commercial building for himself and Winter. Title to the building was held by the Straw Boss Corporation, a closely-held concern owned by Wood and Winter. Wood and Winter ultimately sold the building for a profit.

Winter was charged with and convicted of two offenses arising out of the Wood transaction: (1) misapplication of funds for nonagricultural purpose, a violation of 18 U.S.C. § 657 (count fifteen), and (2) receiving benefits from a loan, a violation of 18 U.S.C. § 1006 (count sixteen).

The final loan transaction serving as a basis for Winter's conviction involved Floyd Kirby and oil and gas speculation. Winter authorized a $20,000 loan to Kirby supposedly for the purchase of livestock. Kirby actually used $10,000 of the loan proceeds to buy Winter a percentage of an oil and gas well being drilled by Kirby's employer, Best Petroleum Company. Winter promised to repay Kirby the $10,000 but never did.[3]

Winter was charged with and convicted of two offenses arising out of the Kirby loan transaction: (1) recording a false statement when he made the loan, a violation of 18 U.S.C. § 1006 (count eighteen), and (2) receiving benefits from a loan, a violation of 18 U.S.C. § 1006 (count nineteen).

In summary, the jury convicted Winter on sixteen of the nineteen counts contained in the indictment. The district court sentenced Winter to five years imprisonment on counts one, two, four, five, and nine, each running consecutively. On the remaining eleven counts (three and ten through nineteen) the district court sentenced Winter to five years on each count with each to run concurrently with Winter's consecutive sentences. Winter thus received a cumulative twenty-five year sentence and was ordered to make $100,000 in restitution to Blacklands.[4] The district court also sentenced Don Stovall to five years in prison for his involvement with Winter and assessed a $50,000 restitution order upon Stovall in favor of Blacklands.

## II.

Winter raises four points of error in his appeal. First, he claims that his sentences based upon his several convictions of violating 18 U.S.C. §§ 657, 1006 are multiplicitous in that he stands punished more than once for the same offense. Second, Winter claims his conviction on count three of the indictment violates the "exculpatory no" doctrine. Third, Winter contends that the district court prejudiced his defense by admitting evidence of his and Stovall's horse-trading activities. Finally, Winter argues that the sentence imposed by the district court is excessive and that we should vacate his sentence and remand to allow the district court to consider an appropriate sentence in light of newly proposed federal sentencing guidelines.

Stovall also appeals complaining that there is insufficient evidence to support his conviction of aiding and abetting Winter's loan fraud. He also asserts that evidence about the Doc Sunshine transaction was erroneously admitted and that it prejudiced his defense.

---

**2.** Howell was also indicted for his involvement in the loan scam. Prior to trial he pled guilty to misprision of a felony, a violation of 18 U.S.C. § 4.

**3.** Kirby was also indicted for his involvement in the loan-investment scheme and prior to trial he pled guilty.

**4.** Within 120 days of imposition of his sentence, Winter requested the district court to reduce his sentence, pursuant to Fed.R.Crim.P. 35(b).

Winter asked the court to reduce his sentence to a total of five years with all other sentences running concurrently. In his motion Winter also acknowledged that he stood convicted of offenses misapplying approximately $165,000 of Blacklands' funds. As for why his sentence should be reduced Winter asserted he could be an asset to the community if allowed to return to it sooner. The district court denied Winter's request to reduce his sentence.

We address first Winter's points of error and then we take up Stovall's complaints.

### III.

### A.

Winter contends that several of his sentences are multiplicitous. He basically claims that he cannot be sentenced for both a violation of 18 U.S.C. § 657 and a violation of 18 U.S.C. § 1006 that arise out of the same factual situation because the provisions proscribe the same conduct. The specific combinations of counts (and accordingly sentences on those counts) that Winter asserts are multiplicitous are one and two, four and five, thirteen and fourteen, fifteen and sixteen, and eighteen and nineteen.

Before reaching the merits of Winter's multiplicity argument we consider a preliminary matter. The government asserts that Winter has waived any opportunity to complain about multiplicity. Our review of the record indicates that in neither his motion to dismiss the indictment, his motion for acquittal, nor his motion requesting reduction of his sentence did Winter raise the complaint of multiplicity of charges or sentences.[5] The government thus contends that pursuant to Fed.R.Crim.P. 12(f) Winter has waived his opportunity to object to multiplicity.

■ We note however that Winter's complaint on appeal goes to the multiplicity of the sentences imposed and does not directly challenge the multiplicity of the indictment. This distinction has been recognized by the courts. Multiplicity of an indictment must be raised as a defense pursuant to Fed.R.Crim.P. 12(b) to be preserved for appeal. *See United States v. Gerald,* 624 F.2d 1291, 1300 (5th Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981). A complaint about multiplicity of sentences however can be raised for the first time on appeal. *See United States v. Osunegbu,* 822 F.2d 472, 481 n. 26 (5th Cir.1987); *United States v. Bradsby,* 628 F.2d 901, 905–06 (5th Cir. 1980); *see also United States v. Blocker,*

802 F.2d 1102, 1103 (9th Cir.1986); *United States v. Rosenbarger,* 536 F.2d 715, 721–22 (6th Cir.1976), *cert. denied,* 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977). Accordingly, Winter has not waived his opportunity in this appeal to contest the alleged multiplicity of his sentences, and we proceed to the merits of his argument.

We address first Winter's challenge to his sentences that run consecutively. Winter argues that his sentences based on counts one and two and counts four and five are multiplicitous and therefore violate his double jeopardy right not to be punished more than once for the same crime.

The double jeopardy clause of the Constitution protects against multiple punishments for the same offense. *See Whalen v. United States,* 445 U.S. 684, 688, 100 S.Ct. 1432, 1435, 63 L.Ed.2d 715 (1980); *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The double jeopardy question, however, cannot be independently resolved without referring to what punishment Congress has authorized, for Congress can impose multiple criminal sanctions for a single act. *See Ball v. United States,* 470 U.S. 856, 859–62, 105 S.Ct. 1668, 1671–72, 84 L.Ed.2d 740, 745–46 (1985); *Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981). Thus, the Supreme Court has stated

> the question of what punishments are constitutionally permissible [under the double jeopardy clause] is not different from the question of what punishment the Legislative Branch intended to be imposed.

*Albernaz,* 450 U.S. at 344, 101 S.Ct. at 1145; *see also Whalen,* 445 U.S. at 688, 100 S.Ct. at 1436.

■ The above directive refers us to *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court's controlling statement on deciding whether Congress intended the same conduct to be punishable under two criminal provisions. *Blockburger* embod-

---

**5.** The multiplicity issue was also not raised during any hearing on these motions.

ies a rule of statutory construction, providing that

> where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact that the other does not.

284 U.S. at 304, 52 S.Ct. at 182. If both offenses require proof of a fact not necessarily required by the other then *Blockburger* is satisfied and sentences under each statutory provision may be constitutionally imposed even though there is a substantial overlap in the proof offered to establish the crimes. *Ball*, 470 U.S. at 861–62, 105 S.Ct. at 1672, 84 L.Ed.2d at 746; *Albernaz*, 450 U.S. at 338, 101 S.Ct. at 1142. Finally, another factor to be considered under *Blockburger* and its progeny is whether the two statutory provisions are directed at "separate evils." *See Albernaz*, 450 U.S. at 343, 101 S.Ct. at 1144; *see also United States v. Gibson*, 820 F.2d 692, 696–98 (5th Cir.1987) (On Petition for Rehearing). With these principles in mind we test the sentences about which Winter complains.

Winter claims that the combination of sentences based on counts one and two, and likewise on counts four and five, violates *Blockburger* and breaches the double jeopardy clause. Since counts one and two respectively involve the same statutory provisions as counts four and five, we will analyze the provisions by reference to counts one and two, but our ultimate conclusion on these counts applies equally to the sentences based on counts four and five.

The combination of crimes that Winter contends are multiple punishments for one act involve (1) false entry in the records of a federal lending institution under 18 U.S.C. § 1006 and (2) willful misapplication of funds of a federal lending institution under 18 U.S.C. § 657. Count one charged a violation of section 1006, which in relevant portion provides:

Whoever, being an officer, agent or employee of ... any lending association authorized or acting under the laws of the United States ... with intent to deceive any officer, auditor, examiner, or agent of any such institution, makes any false entry in any book, report, or statement of or to any such institution ... [shall be guilty of an offense against the United States].[6]

Count two charged a violation of section 657, which in relevant portion provides:

Whoever, being an officer, agent or employee of ... any lending institution authorized ... under the laws of the United States ... embezzles, abstracts, purloins or willfully misapplies any moneys, funds ... or other things of value belonging to such institution ... [shall be guilty of an offense against the United States].

As required by *Blockburger*, we focus on the essential elements of each statutory provision to determine if each requires proof of a fact not necessarily required by the other. *See Albernaz*, 450 U.S. at 338, 101 S.Ct. at 1142 (*quoting Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975)). To establish that Winter committed the false entry offense under section 1006, the government was required to prove the following elements:

(1) That Blacklands was a lending institution authorized and acting under the laws of the United States;

(2) That Winter was an officer, agent, or employee of Blacklands;

(3) That Winter knowingly and willfully made, or caused to be made, a false entry concerning a material fact in a book, report, or statement of Blacklands; and

(4) That Winter acted unlawfully and with intent to injure and defraud Blacklands, or with the intent to deceive any of its officers, auditors, examiners, or agents.

In contrast, to establish that Winter committed a misapplication of funds offense

---

**6.** Section 1006 also provides for a second offense of receiving benefits directly or indirectly out of a loan. We do not discuss the constitutionality of a combination of this 1006 offense with either a section 657 misapplication offense or a section 1006 false entry offense.

under section 657, the government was required to prove the following elements:

(1) That Blacklands was a lending institution authorized under the laws of the United States;

(2) That Winter was an officer, agent, or employee of Blacklands;

(3) That Winter knowingly and willfully misapplied money belonging to Blacklands; and

(4) That Winter acted unlawfully and with intent to injure and to defraud Blacklands.

■ The third elements of the two offenses are obviously different. Proof that Winter violated section 1006 by making a false entry does not necessarily entail showing that he misapplied funds of Blacklands. Conversely, proof that Winter violated section 657 by misapplying funds does not necessarily entail showing that he made a false entry concerning a material fact in the books and records of Blacklands. Therefore, since both offenses require proof of a fact not necessarily required by the other, the two sections do not constitute the same offense, and separate sentences may constitutionally be imposed for each violation.

We are also of the opinion that the two statutory provisions are directed at "separate evils." The purpose of section 1006's false entry prohibition is to ensure that the financial documents and materials of federally-controlled financial institutions are accurate and truthful. This goal promotes federal authorities' abilities to accurately evaluate the financial institution's economic position. In contrast, the purpose of section 657's misapplication prohibition is to protect federally-insured financial institutions from loss and preserve the assets for their intended distribution. *See United States v. Wilson*, 500 F.2d 715, 720 (5th Cir.1974). While both prohibitions are directed at employees of federally-related financial institutions, they seek to deter two different kinds of improper employee action.

Our conclusion that the false entry offense of section 1006 and the misapplication offense of section 657 are separate crimes for *Blockburger* purposes and the double jeopardy clause is in accord with a Seventh Circuit decision. In *United States v. Marquardt*, 786 F.2d 771, 778–79 (7th Cir.1986), the court stated:

The crime of willful misapplication of funds under § 657 is entirely separate and distinct from the crime of making false entries on the records of a savings and loan under § 1006. The prosecution is not required to prove willful misapplication of funds in order to establish a charge of false entry, nor is the making of a false entry necessary for conviction on a charge of willful misappropriation of bank funds ... Accordingly, as the crime of false entry requires proof of an element (false entry) not necessary to prove misapplication of funds [separate sentences based on these provisions] are not multiplicitous.

As support for his argument that false entry and misapplication are the same offense under *Blockburger* and the double jeopardy clause, Winter cites *United States v. Kehoe*, 573 F.2d 335 (5th Cir.), *vacated*, 579 F.2d 971 (5th Cir.1978), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1218, 59 L.Ed.2d 457 (1979). Without delving into the problem of *Kehoe's* precedential value, much less its analytical application of *Blockburger*, we simply note that that case involved only the issue of whether a section 657 misapplication offense is the same as a section 1006 offense of receiving benefits from a loan. Since false entry and misapplication were not involved in *Kehoe*, Winter's reliance on *Kehoe* is misplaced and of no aid to him in this appeal.

We therefore hold that a section 657 misapplication offense and a section 1006 false entry offense are distinct and separate criminal provisions under the *Blockburger* test and that consistent with the double jeopardy clause consecutive punishment may be imposed under each provision. Accordingly, we find no error in Winter's sentencing on counts one, two, four, and five.

Winter also raises his multiplicity challenge to several of his sentences that run concurrently with the sentences we have

just approved. Specifically, he challenges the combination of sentences on counts thirteen and fourteen, fifteen and sixteen, and eighteen and nineteen as punishing him twice for the one criminal act contained in each combination. Based upon the concurrent sentence doctrine, we find it unnecessary to review these sentences.

■ The concurrent sentence doctrine is a tool used to promote judicial economy. *See Benton v. Maryland,* 395 U.S. 784, 791, 89 S.Ct. 2056, 2060, 23 L.Ed.2d 707 (1969). Under this doctrine the existence of one valid conviction makes unnecessary the review of other convictions which run concurrently with the valid conviction. *United States v. Montemayor,* 703 F.2d 109, 116 (5th Cir.), *cert. denied,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). We have applied the doctrine numerous times, *see United States v. Adi,* 759 F.2d 404, 409 (5th Cir.1985); *United States v. Montemayor,* 703 F.2d at 116; *United States v. Niver,* 689 F.2d 520, 531 (5th Cir.1982); *United States v. Cardona,* 650 F.2d 54, 58 (5th Cir. Unit A June 1981), and particularly when double jeopardy claims have been asserted against concurrent sentences. *See United States v. Harrelson,* 754 F.2d 1182, 1185 (5th Cir.1985); *United States v. Diaz,* 733 F.2d 371, 376 (5th Cir.1984).

We apply the concurrent sentence doctrine in a manner that removes the adverse collateral consequences of the sentence from the defendant. Accordingly, we have adopted the policy of vacating the unreviewed sentence and suspending imposition of that sentence. *See Harrelson,* 754 F.2d at 1185; *Montemayor,* 703 F.2d at 109, *Cardona,* 650 F.2d at 58. We also apply the doctrine more freely in a situation, such as in this case, where the grounds for

challenging the concurrent sentences are not related to the defendant's actual guilt or innocence. *See United States v. Rubin,* 591 F.2d 278, 280 (5th Cir.), *cert. denied,* 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 87 (1979).

The Supreme Court has recently addressed our use of the concurrent sentence doctrine. In *Ray v. United States,* —— U.S. ——, 107 S.Ct. 2093, 95 L.Ed.2d 693 (1987), the Court held that we could not apply the doctrine to refuse to review a concurrent sentence when the district court had imposed, pursuant to 18 U.S.C. § 3013, a special assessment fee upon the defendant for that concurrent sentence. In the Court's words, "Since petitioner's liability to pay this total [assessment fee] depends on the validity of each of his three convictions, the sentences are not concurrent." —— U.S. at ——, 107 S.Ct. at 2093–94.

■ Under *Ray,* however, we are not precluded from applying the concurrent sentence doctrine in this case because the district court did not assess section 3013 assessments against Winter on any of the counts for which he stands convicted. While the section's language is mandatory in nature, the court did not assess the $50 fee, and the government raised no objection to this failure in the district court or on this appeal. In light of this fact, Winter's sentences on counts thirteen, fourteen, fifteen, sixteen, eighteen, and nineteen are truly concurrent sentences under *Ray's* teachings.[7]

Accordingly, we choose to apply the concurrent sentence doctrine to Winter's concurrent sentences challenged as multiplicitous. Pursuant to our established policy, we vacate these sentences and suspend imposition of the sentences.[8]

7. While the district court failed to impose the section 3013 assessment on each count upon which Winter was convicted, it did impose a general $100,000 restitution order pursuant to 18 U.S.C. § 3579. The district court did not specify which counts supported the amount of the restitution order.

In order to comply with both the letter and spirit of the *Ray* opinion, we believe the best course is to vacate the restitution order and remand to the district court for entry of another restitution order based only on the convictions

that have been affirmed or not challenged on appeal. In this way we ensure that the defendant suffers no collateral consequences from the unreviewed concurrent sentences.

8. As we have also stated in the past, "If the government subsequently determines that the interest of justice requires reimposition of the unreviewed sentence[s], then it may interpose its objections and the[se] sentence[s] would then be open to appellate review." *Cardona,* 650 F.2d at 58.

## B.

In his second point of error Winter contends that his conviction and sentence on count three is barred by the "exculpatory no" doctrine. On count three Winter was sentenced to five years in prison for violating 18 U.S.C. § 1006's false entry provision. Since Winter's sentence on count three runs concurrently with other affirmed sentences of the same length, we find it unnecessary to delve into his contentions, and, for the reasons already given, we apply the concurrent sentence doctrine. Accordingly, we vacate Winter's sentence on count three and suspend imposition of this sentence.

## C.

In his third point of error Winter claims that the district court improperly admitted evidence about the purchase, insurance, and untimely death of Doc Sunshine, and he seeks a reversal of his conviction (count twelve) for improperly benefiting from a loan.[9] He contends (1) that the relationship and actions between Simpson, Stovall, and himself were irrelevant and prejudicial, and (2) that by introducing this evidence the government attempted to suggest that he and Stovall had engaged in insurance fraud. To support his position Winter relies upon Fed.R.Evid. 404(b)'s prohibition on extrinsic evidence of a defendant's bad conduct and upon Fed.R.Evid. 403's prohibition on the admission of unnecessarily prejudicial evidence. Neither rule supplies Winter with any succor.

The government introduced the evidence regarding the Doc Sunshine transaction as part of its effort to establish that Winter improperly received benefits from a loan made to Stovall for the purpose of purchasing the horse. Since the evidence admitted by the district court detailed the full relationship between Simpson, Stovall, and Winter and established that Winter did receive an immediate financial benefit, i.e., an ownership interest in Doc Sunshine, as a result of making the loan to Stovall, it was a legitimate and necessary part of the government's case. In the parlance of our case law, the incidents detailed in this evidence were "inextricably intertwined" with the charged offense; therefore, they do not amount to "extrinsic acts" so as to fall within the realm of rule 404(b)'s evidentiary bar. *See United States v. Carlock*, 806 F.2d 535, 553 (5th Cir.1986); *United States v. Nichols*, 750 F.2d 1260, 1264–65 (5th Cir.1985). Furthermore, we can discern no abuse of discretion in the district court's determination that the probative value of this evidence substantially outweighed any undue prejudicial effect. *Carlock*, 806 F.2d at 553.[10]

We find no error in the admission of evidence regarding the Doc Sunshine transaction. Furthermore, we find this evidence clearly establishes that Winter personally benefited from the loan he made to Stovall and that in making the loan Winter expected to receive this benefit. Accordingly, we affirm Winter's conviction on count twelve.

9. We perceive Winter's challenge to his conviction on count twelve as going to whether the government actually proved his guilt with competent evidence. Accordingly, we deem it appropriate not to apply the concurrent sentence doctrine. *See Rubin*, 591 F.2d at 280–81 (when actual evidentiary guilt or innocence challenged concurrent sentence doctrine should not be applied).

10. Our conclusion that the district court did not abuse its discretion in resolving the rule 403 issue is bolstered by two facts. First, the district court specifically stated that it had balanced the evidence's probative value and its prejudicial effect and concluded that it should be admitted. In light of the court's explicit confrontation of the issue and the usual defer-ence accorded district court's evidentiary rulings, *see United States v. Abel*, 469 U.S. 45, 54, 105 S.Ct. 465, 470, 83 L.Ed.2d 450 (1984), we see no reason to disturb this decision. Second, the district court on at least three occasions during trial cautioned the jury that the defendants were on trial only for the conduct alleged in the indictment and none other. Additionally, in its charge the district court instructed the jury to consider the evidence only as it related to the indicted offenses. Through its timely and prudential instructions the district court effectively ensured that jury considered the evidence of the Doc Sunshine transaction as it related to the offenses alleged in the indictment, thereby further reducing any unnecessary prejudice to Winter or Stovall.

## D.

In his final point of error Winter claims that his cumulative sentence of twenty five years is excessive and argues that we should vacate the sentences and remand the case to the trial court for re-sentencing consistent with the Sentencing Reform Act of 1984, Pub.L. 98–473 98th Cong., 2d Sess., sec. 211, 98 Stat. 1988 (1984), *as amended,* Pub.L. 99–217, 99th Cong., 1st Sess. §§ 2, 4, 99 Stat. 1728 (1985) *and* Pub.L. 99–646. 99th Cong., 2d Sess., § 35 (1986), *newly codified* at 18 U.S.C. § 3553.

■ The matter and extent of sentencing is committed to the district court's discretion. Absent an allegation and proof that the court was influenced by impermissible motives or incorrect information, a sentence within the range provided for by statute will not be reversed. *See Dorszynski v. United States,* 418 U.S. 424, 441, 94 S.Ct. 3042, 3051, 41 L.Ed.2d 855 (1974); *United States v. Robinson,* 700 F.2d 205, 215 (5th Cir.1983); *United States v. Garcia,* 693 F.2d 412, 415 (5th Cir.1982).

■ Winter does not allege much less establish that the district court acted on impermissible motives or erroneous information in imposing sentence. The court also did not exceed the maximum range of punishment on any count for which Winter stood convicted. Furthermore, our review of the record indicates that the trial court considered its sentence to be consistent with others imposed in its district and appropriate in light of Winter's intentional and extended abuse and misuse of his position at Blacklands. The trial court also emphasized the substantial damage to Blacklands and the local community caused by Winter's activities when handing down its sentence. In conclusion, we find nothing in the record to suggest that the district court abused its discretion in fashioning Winter's sentence.

Accordingly, we hold that the district court did not abuse its discretion in formulating and imposing Winter's sentences.[11]

## IV.

Stovall also appeals raising two points of error: (1) the evidence of the Doc Sunshine transaction was erroneously admitted, and (2) there is insufficient evidence to support his conviction for aiding and abetting Winter's violation of 18 U.S.C. § 1006, as charged in count twelve of the indictment.

As we have already explained, the evidence of the entire Doc Sunshine transaction was properly admitted by the district court. *See supra* part III C. For the reasons already given, we find Stovall's first argument meritless.

Count twelve of the indictment charged Stovall with aiding and abetting Winter's unlawful receipt of benefits from the loan Winter made to Stovall for the purchase of Doc Sunshine, a violation of 18 U.S.C. § 2.[12] Stovall challenges his conviction on count twelve as not being supported by sufficient evidence.

In reviewing for sufficiency of the evidence, the question before this court is whether a reasonable trier of fact could have found that the evidence established the defendant's guilt beyond a reasonable doubt. In deciding this question we review all of the evidence and the reasonable inferences drawn from it in the light most favorable to the government. *See Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Ortiz-Loya,* 777 F.2d 973, 979 (5th Cir.1985); *United States v. Michelena-Orovio,* 719 F.2d 738, 743 n. 4 (5th Cir.1983) (en

11. We also decline Winter's invitation to vacate his sentence and remand the case for resentencing under the provisions of the Sentencing Reform Act. While the Second Circuit did take this unusual route in *United States v. Golomb,* 754 F.2d 86 (2d Cir.1985), it noted its action was out of the ordinary and did not suggest that it should be applied in all cases. We see no reason to send this case back to the district court for re-sentencing pursuant to standards that are not yet in effect. The district court explained why it imposed the sentences it did, and we are of the opinion that there is no good reason for making it repeat the action.

12. Title 18 U.S.C. § 2 provides in part:
(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

banc), *cert. denied,* 465 U.S. 1104, 104 S.Ct. 1605, 80 L.Ed.2d 135 (1984).

■ In order to obtain a conviction for aiding and abetting, the government was obligated to show that Stovall associated with Winter's criminal activity, participated in it in an effort to bring it about, and sought by his actions to make it succeed. *See United States v. Colwell,* 764 F.2d 1070, 1072 (5th Cir.1985); *United States v. Martinez,* 555 F.2d 1269, 1272 (5th Cir. 1977). Thus, an aiding and abetting offense has two components: (1) an act by a defendant which contributes to the execution of the criminal activity, and (2) the intent to aid in its commission. *United States v. Stanley,* 765 F.2d 1224, 1242 (5th Cir.1985). *See also United States v. Holcomb,* 797 F.2d 1320, 1328 (5th Cir.1986).

■ After our review of the record we believe the evidence is sufficient to support Stovall's conviction of aiding and abetting Winter's fraudulent activities. Trial testimony reflects that prior to Winter's making of the $50,000 loan to Stovall, both Winter and Stovall had viewed the horse Doc Sunshine at a prior owner's ranch; that they apparently expressed interest in purchasing the horse; that on the day the loan application was made Stovall represented that the loan was for the purchase of "livestock" rather than particularly a "horse"; that a Blacklands' draft in the amount of $50,000 was given to Stovall; that a Bill of Sale was executed listing Stovall and Winter as co-purchasers of Doc Sunshine; and that Stovall and Winter together executed a promissory note for the balance of the purchase price of Doc Sunshine. Stovall and Winter also mentioned that they thought Blacklands' authorities might become suspicious if the loan listed that it was for the purchase of a horse. Stovall furthermore called Winter on the day of the sale to inform Winter that he had relayed the $50,000 to Simpson and that they had become joint owners in the horse. From this course of conduct, and viewing it favorably toward the jury verdict, we conclude that Winter certainly benefited from the loan made to Stovall, that Stovall aided Winter in gaining this benefit, and that both shared a common intent to obtain Blacklands' funds to carry out the purchase of Doc Sunshine without disclosing this intent or their joint interests in the horse.

Accordingly, we affirm Stovall's conviction on count twelve of the indictment.

### V.

For the reasons stated above, we affirm the judgment of conviction as to Robert Winter's sentences on counts one, two, four, five, and twelve. As for counts three, thirteen, fourteen, fifteen, sixteen, eighteen, and nineteen, we vacate the sentences imposed on these counts and remand to the district court with instructions to suspend the imposition of sentences imposed on these counts. In addition, we vacate the judgment insofar as it orders Winter to pay restitution to Blacklands and remand with instructions to reconsider the amount of restitution in accordance with this opinion. Finally, we affirm the judgment of conviction of Don Stovall on count twelve.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.