# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———

No. 12-10582

———

UNITED STATES OF AMERICA,

United States Court of Appeals
Fifth Circuit

**FILED**

December 12, 2014

Lyle W. Cayce
Clerk

Plaintiff – Appellee

v.

FRENCHITT SU-DELL COLLINS; ALLEN MURRAY ROBISON,

Defendants – Appellants

———

Appeals from the United States District Court
for the Northern District of Texas

———

Before STEWART, Chief Judge, and JONES and HIGGINSON, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Frenchitt Su-Dell Collins and Allen Murray Robison conspired together and with others to defraud insurance companies of hundreds of thousands of dollars. Appellants and their confederates filed false claims for automobile accidents that had never happened, using postal boxes registered to assumed names. Following their convictions by a jury, defendants appeal on various grounds, the only novel one of which involves the "concurrent sentence doctrine." For the following reasons, we **AFFIRM** the convictions and Collins's sentence.

No. 12-10582

## I.

Frenchitt Collins branded himself as "Big Brother."  He and his associates, including his half-brother Allen Robison, recruited people to file automobile accident and injury insurance claims when in fact no accident had occurred.  They advertised on television and elsewhere, used heavy machinery to damage recruits' automobiles, and created sham chiropractic clinics to "provide treatment."  The nerve center of the scheme was in Collins's house, where his wife and mistress, among others, provided administrative support.  Collins coached recruits through claims-adjustment meetings with insurers, and sometimes even used their identities directly.  Robison enlisted his sometimes girlfriend Natasha Robinson to lease a post office box, instructing her to authorize a fake clinic to access the box.

A grand jury indicted Collins on nine counts: conspiracy to commit mail fraud and health care fraud, and aiding and abetting, in violation of 18 U.S.C. §§ 1349 and 2 (Count One); three counts of mail fraud and aiding and abetting, in violation of 18 U.S.C. §§ 1341 and 2 (Counts Two-Four); four counts of aggravated identity theft and aiding and abetting, in violation of 18 U.S.C. §§ 1028A and 2 (Counts Five-Eight); and conspiracy to tamper with witnesses, in violation of 18 U.S.C. § 1512(k) (Count Nine).[1]  Robison was charged in Counts One, Two, and Nine only.  Shortly thereafter, four defendants were arrested.  Collins was placed in pretrial detention and Robison was released on conditions.

Taking advantage of his relative freedom, Robison attempted to induce several witnesses to sign affidavits that the witnesses later testified were riddled with falsehoods.  Robison ignored the magistrate judge's first warning and his pretrial release was revoked.  Federal investigators subpoenaed

---

[1] The Government dismissed Counts Five and Eight before trial began.

jailhouse calls between Collins and Robison in which the two appear to discuss their efforts at obtaining favorable trial testimony, including from the witnesses to whom Robison had already spoken.

After a five-day trial, the jury convicted Collins and Robison on all counts. On November 7, 2012, the district court sentenced Collins to 180 months imprisonment and restitution of $700,715.04. The court sentenced Robison to a total of 110 months imprisonment and restitution of $203,572.26. A Special Assessment Fee of $100.00 was imposed on each defendant for each count of conviction. Both Appellants timely appealed.

## II.

We first address the convictions, taking them in the order in which they appear in the indictment.

### A. Conspiracy to Commit Health Care Fraud (Count One)

Collins argues that the evidence was insufficient to support his conviction for conspiracy to commit health care fraud.[2] Because Collins preserved his objection by moving for acquittal on all conspiracy counts, we review the sufficiency challenge *de novo*. *United States v. Grant*, 683 F.3d 639, 642 (5th Cir. 2012). Appellate review, however, is "highly deferential to the verdict." *United States v. Harris*, 293 F.3d 863, 869 (5th Cir. 2002). This court determines only "whether the evidence, in the light most favorable to the government with all reasonable inferences and credibility choices made in support of a conviction, allows a rational fact finder to find every element of the offense beyond a reasonable doubt." *United States v. Asibor*, 109 F.3d 1023, 1030 (5th Cir. 1997).

---

[2] On appeal, Robison's counsel briefs this issue under *Anders,* showing no nonfrivolous challenge can be made by Robison.

No. 12-10582

## 1. Healthcare Benefit Program

Collins argues that the insurance companies he defrauded do not meet the statutory definition of "health care benefit program." The healthcare fraud statute makes it illegal to "defraud any health care benefit program[.]" 18 U.S.C. §1347(a). That term is in turn defined as "any public or private plan or contract, affecting commerce, under which any medical benefit, item or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract." *Id.* § 24(b).

Collins contends that the defrauded insurance companies here "provided automobile insurance," which "by definition" are not health care benefit programs. The Second Circuit, in *United States v. Lucien*, rejected as "without merit" a similar argument concerning the New York State no-fault automobile insurance program. 347 F.3d 45, 52 (2d Cir. 2003). *Accord United States v. Gelin*, 712 F.3d 612, 617 (1st Cir. 2013) (applying § 1347 to an automobile insurer). We have no reason to differ with sister circuits. To the extent automobile insurers pay for medical treatment, they are health care benefit programs under the statute. The fraudulent claims here included, among others, claims for medical treatment at a chiropractor, and the insurance companies paid those claims.

## 2. Evidence of Agreement

Collins next argues that there was insufficient proof of an agreement to sustain his conviction for conspiracy to commit fraud. He states that "all of the insurance company witnesses called by the government to testify against Collins did not testify that there was any connection or nexus with him." He faults the Government's "two-year 'cradle-to-the-grave' investigation" for not producing "audio recordings, text messages, e-mails, video surveillance, or financial records" – evidence that he claims is "the norm" in these sorts of cases.

4

No. 12-10582

Collins also asserts that unindicted coconspirators did not share proceeds. While these types of evidence could support a conviction for conspiracy, their absence does not imply there was no agreement. Other types of evidence can support, and here do support, the verdict.

The Government points to the testimony of three witnesses: Andrina Anthony, Demetrias Spence, and Savoy Terral. Anthony testified that Robison introduced Collins to her as the leader of the scheme and that Collins gave her instructions on what to say to her insurance company. Collins even attended the meeting at the insurance company and intervened to explain why Anthony appeared nervous. The Government produced a picture of the two together at the insurance company's office. A friend introduced Spence to Collins as "Big Brother" when Spence complained about continual maintenance costs on her vehicle. Collins told Spence he had done this "time and time again" and that the job "should be easy." Collins took Spence's vehicle and returned it wrecked in such a way that, according to Spence, "[i]t didn't look like it was a regular accident." Collins then filed Spence's insurance claim and coached her in answering the questions. Terral testified that Collins told her he wrecked another car with a machine that he owned. Collins then asked Terral to start going to a chiropractor, even though she had not been involved in the accident with the vehicle related to the claims (no one was – there was no accident). Collins actually hired Terral to assist him with the medical billing portion of his scheme, which was run out of his bedroom.

The district court instructed the jurors that they must find an agreement in order to convict the defendants of conspiracy. The testimony of these three witnesses, along with much other evidence of record, is more than enough for a rational juror to find the existence of an illegal agreement.

No. 12-10582

## B. Mail Fraud (Counts Two-Four)

Both Appellants urge us to vacate their Count Two mail fraud convictions either under the concurrent sentence doctrine or on the merits. Under the Guidelines, each Appellant's sentence on Count One (conspiracy) runs concurrently with the Count Two sentence.

### 1. Concurrent Sentence Doctrine

Courts have used the concurrent sentence doctrine to avoid reviewing a conviction whose sentence is set to run concurrently with the sentence of a valid conviction. In the Fifth Circuit, this was accomplished in years past by vacating the unreviewed conviction (while the valid conviction remains untouched). *United States v. Stovall*, 825 F.2d 817, 824 (5th Cir. 1987).

As its name implies, the concurrent sentence doctrine requires that sentences be "concurrent." The sentences here, however, are not perfectly concurrent because the district court imposed a $100 special assessment on the Appellants as to each of the counts.[3] According to *Ray v. United States*, however, when a defendant's "liability to pay . . . depends on the validity of each . . . conviction[], the sentences are not concurrent." 481 U.S. 736, 737, 107 S. Ct. 2093, 2094 (1987) (per curiam). As a result of *Ray*, defendants hardly ever invoke the concurrent sentence doctrine anymore.

To avoid this problem, Appellants suggest that this court has discretion to vacate the special assessments to create complete concurrence. They cite *Stovall*, where this court invoked the concurrent sentence doctrine when the trial court had neglected to impose the special assessments required by law.

---

[3] In addition to the special assessments, the district court ordered restitution in different amounts for each Appellant, and did not specify to which counts the restitution related. The Government argues that this defeats concurrence. However, when faced only with undifferentiated restitution, this court ordered "remand to the district court for entry of another restitution order based only on the convictions that have been affirmed or not challenged on appeal." *Stovall*, 825 F.2d at 824 n. 7.

No. 12-10582

*United States v. Stovall*, 825 F.2d 817, 824 (5th Cir. 1987) *amended by later opinion*, 833 F.2d 526 (5th Cir. 1987).[4]

This argument fails. It should be obvious that declining to affirmatively correct an irregularity below (whether the omission was deliberate or an oversight) is not the same as creating that irregularity on appeal. Importantly, in *Stovall*, we acknowledged the mandatory nature of the assessments but noted that "the [district] court did not assess the $50 fee, and the government raised no objection to this failure in the district court or on this appeal." *Id.* In this case, by contrast, the district court *did* impose the special assessments and Appellants allege no impropriety in its doing so. *Stovall* actually stands for the proposition that the presence of a special assessment on appeal defeats the concurrent sentence doctrine.

The Government also points to the difficulty that could arise regarding Collins's conviction on Count Six, aggravated identity theft, if Count Two, the facts of which underlie the Count Six conviction, is vacated. Nothing in the concurrent sentence doctrine supports undermining unrelated counts of conviction.

## 2. Evidentiary Sufficiency

Because neither Appellant properly objected,[5] we review only for plain error their challenges to the evidence supporting the mail fraud convictions. *United States v. Barton*, 257 F.3d 433, 439 (5th Cir. 2001). A conviction can be reversed under the plain error standard for evidentiary insufficiency "only to

---

[4] After *Stovall* was decided, it came to the court's attention that Congress had passed the statute imposing special assessments after the defendants there committed their crimes. Accordingly, that portion of the opinion was revoked and it is not controlling authority.

[5] Collins argues that he moved for dismissal of all counts of conspiracy and thereby preserved the right to *de novo* review. Count Two, however, is a separate charge of mail fraud and aiding and abetting, not conspiracy. Robison admits that he has forfeited *de novo* review.

avoid a manifest miscarriage of justice." *United States v. Parker*, 133 F.3d 322, 328 (5th Cir. 1998) (citing *United States v. McCarty,* 36 F.3d 1349, 1358 (5th Cir. 1994)). "'Such a miscarriage would exist only if the record is devoid of evidence pointing to guilt, or . . . because the evidence on a key element of the offense was so tenuous that a conviction would be shocking.'" *Id.* (*quoting United States v. Pierre*, 958 F.2d 1304, 1310 (5th Cir. 1992) (en banc)); *see also United States v. Delgado*, 672 F.3d 320, 329 (5th Cir. 2012) (en banc).

Both Appellants argue that they took no affirmative steps to procure a settlement check for an automobile accident that allegedly occurred in May 2008. The jury convicted both defendants of mail fraud as well as aiding and abetting, but their briefs primarily focus on the latter aspect of Count Two. To convict for mail fraud by aiding and abetting, the Government must prove that (1) the offense of mail fraud was committed by someone, (2) the defendant associated with the criminal venture, (3) the defendant purposefully participated in the criminal venture, and (4) the defendant took affirmative steps to make the venture successful. *United States v. Carreon-Palacio*, 267 F.3d 381, 389 (5th Cir. 2001).

The evidence of Count Two mail fraud here was overwhelming. Several people associated with Collins's organization filed insurance claims based on this non-existent auto accident, and one claim was paid to "Advanced Chiro Care," a non-existent chiropractic clinic whose post office box had been set up by Robison's girlfriend Natasha Robinson at Robison's direction. Natasha gave Robison the key to the post office box. Collins's leadership of the claims-filing fraud ring was well established. Robison contends he was jailed in Oklahoma at the time these fraudulent claims were made. Neither that fact, however, nor the fact that the specific check never made it to the post office box (it was sent to the alleged street address of Advanced Chiro Care instead) absolves Robison of his affirmative role in furthering the success of the criminal

enterprise.  Robison was at least an aider and abettor of the crime; hence, there is no *plain error* in his conviction.

### 3. McCarran-Ferguson Reverse Preemption

Collins argues that the McCarran-Ferguson Act, 15 U.S.C. §§ 1011 *et seq.*, suspends the operation of federal mail fraud statutes in this case. Congress passed the Act "to restore the supremacy of the States in the realm of insurance regulation."  *U.S. Dep't of Treas. v. Fabe*, 508 U.S. 491, 500, 113 S. Ct. 2202, 2207 (1993).  The Act mandates that no federal law "shall be construed to *invalidate, impair, or supersede* any law enacted by any State for the purpose of regulating the business of insurance" unless it "specifically relates to the business of insurance[.]"  15 U.S.C. § 1012 (emphasis added). However, "when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application."  *Humana Inc. v. Forsyth*, 525 U.S. 299, 310, 119 S. Ct. 710, 717 (1999).  Thus, the usual "reverse-preemption" analysis is in two steps: is the federal law specifically related to insurance, and if not, does it conflict, invalidate, impair, or supersede some state insurance law?

The first part of the test is not at issue – the fraud statutes here are not specifically addressed to the business of insurance.  Resolving the reverse-preemption question, then, turns on whether the mail fraud statute "invalidates, impairs, or supersedes" Texas insurance laws. *See* Tex. Ins. Code § 541.003 (broadly prohibiting "unfair method[s] of competition" and "unfair or deceptive act[s]").  Collins, however, does not and cannot identify any conflict. First, the mail fraud statute runs in the same direction as § 541.003 of the Insurance Code.  To the extent they apply to the same behavior, both laws condemn dishonesty.  Second, the Insurance Code provides civil remedies to consumers, and the mail fraud statute is a criminal law.  The two laws only

come in contact with one another when a person, like Collins, commits unfair or deceptive trade practices in the insurance business by, among other things, breaking federal mail fraud laws.  The McCarran-Ferguson Act does not preclude concurrent operation of the federal mail fraud statute.[6]

### C. Conspiracy to Tamper with Witnesses (Count Nine)

Both Appellants moved for acquittal on their Count Nine convictions at the appropriate times during the trial, thus preserving their rights to *de novo* review, though all reasonable inferences are drawn in favor of the verdict. *United States v. Curtis*, 635 F.3d 704, 717 (5th Cir. 2011).

The jury found Appellants guilty of conspiracy in violation of 18 U.S.C. § 1512(k), which criminalizes a conspiracy to "knowingly . . . corruptly persuade[] another person . . . or engage[] in misleading conduct toward another person, with intent to [] influence, delay, or prevent [his] testimony."

Appellants argue that only two witnesses testified concerning the conspiracy to corruptly persuade witnesses, and that the Government proved only that Appellants had shown the witnesses affidavits that the witnesses refused to sign.  This characterization is generous at best.  One of these witnesses testified at trial about the very fact that she had refused to testify for defendants because the draft affidavit "was a bunch of lies on it."  This same witness testified virtually line-by-line to the falsehoods in the draft affidavit. The Government also introduced evidence of jailhouse calls between Appellants that support the jury verdict.  They discuss getting people to sign

---

[6] In summarizing his first point of error, Collins claims that his "convictions lack evidentiary support and were tainted by the Government's inadvertent and improper *Brady* . . . violations."  His brief lacks any argument on this point or on a reference to the identity theft conviction (Counts Six and Seven).  *See* Fed. R. App. P. 28(a)(8)(A).  In this circuit, "[a] party that asserts an argument on appeal, but fails to adequately brief it, is deemed to have waived it." *United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010) (*quoting Knatt v. Hosp. Serv. Dist. No. 1*, 327 F. App'x 472, 483 (5th Cir. 2009) (unpublished)).

No. 12-10582

"applications" and "contracts" and lapse into what appears to be some attempt at code whenever the subject arises. These calls together with witness testimony amply support a finding that Collins and Robison conspired to induce witnesses to provide false sworn testimony.

Appellants' First Amendment challenge to this conviction is misplaced. The Supreme Court has exhibited "restraint… where the act underlying the conviction – 'persua[sion]' – is by itself innocuous." *Arthur Andersen LLP v. United States*, 544 U.S. 696, 703, 125 S. Ct. 2129, 2134 (2005) (alteration in original). Indeed, a litigant even has a right to persuade a witness to withhold documents or his testimony in certain circumstances. *Id.* at 704, 125 S. Ct. at 2135 (when communications are privileged, for example). Appellants argue that Count Nine alleged only that they provided witnesses with an affidavit to sign, and that each witness examined the affidavit and refused. This conduct, they appear to argue, cannot pass constitutional muster for illegal "knowingly corruptly persuading." However, the district court properly instructed the jury on the elements of conspiracy and corrupt persuasion, including the requisite *mens rea* for the latter. There is no indication that the jury convicted these defendants for anything other than constitutionally unprotected behavior.[7]

### III.

Appellant Collins challenges the district court's calculation of his sentence on five grounds: miscalculating the amount of loss; miscalculating the number of victims for the mass-marketing enhancement; finding that he led or organized a criminal activity that involved five or more participants or was

---

[7] Collins also argues that there was a material variance between Count Nine in the indictment and the evidence presented at trial. This argument has no merit. Consistent with the indictment, the Government introduced evidence at trial of a recorded call between Collins and his wife on October 20, 2011; regardless, there was no unfair surprise or prejudice because Collins had received this recording in discovery.

otherwise extensive;[8] applying the sophisticated means enhancement; and enhancing his sentence for obstruction of justice.  Collins preserved all of these claims by objecting during the sentencing hearing.  Appellate courts review sentences for reasonableness under the standard set forth in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005).  The rule in this circuit is that "a sentence within a properly calculated Guideline range is presumptively reasonable."  *United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006), *approved by Rita v. United States*, 551 U.S. 338, 346-47, 127 S. Ct. 2456, 2462 (2007).

### A. Loss Amount

Collins makes several arguments in challenging the district court's calculation of the loss his schemes inflicted.  "The calculation of the amount of loss is a factual finding, reviewed for clear error."  *United States v. Tedder*, 81 F.3d 549, 550 (5th Cir. 1996); *see also United States v. Setser*, 568 F.3d 482, 496 (5th Cir. 2009).  However, the appeals court reviews "*de novo* how the [district] court calculated the loss, because that is an application of the guidelines, which is a question of law."  *United States v. Klein*, 543 F.3d 206, 214 (5th Cir. 2008) (citing *United States v. Saacks*, 131 F.3d 540, 542-43 (5th Cir. 1997)).

First, Collins challenges the method on which the district court relied to calculate the actual and intended loss Collins inflicted.  The district court sentenced Collins on the basis of 58 total claims, 47 of which were successful.

---

[8] Because the record is replete with evidence that Collins's scheme utilized more than five participants, his objection to the § 3B1.1(a) four-level enhancement is frivolous.

For the failed claims, the PSR averaged the claims that were actually paid out. Contrary to Collins's view, this was a reasonable methodology.

Collins objects that the district court relied on hearsay. However, "[i]n resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial[.]" U.S.S.G. § 6A1.3(a). And "for sentencing purposes, even 'uncorroborated hearsay evidence' is sufficiently reliable." *United States v. West*, 58 F.3d 133, 138 (5th Cir. 1995) (*quoting United States v. Golden*, 17 F.3d 735, 736 (5th Cir. 1994)).

Collins further contends it was inappropriate to consider the unsuccessful claims at all. The Sentencing Guidelines advise courts to consider "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1)(A); *accord United States v. Levario-Quiroz*, 161 F.3d 903, 906 (5th Cir. 1998) ("Courts are to consider more than the offense of conviction itself in fitting the sentence to the crime and the criminal."). Collins cites *Apprendi/Alleyne* for the proposition that any fact that increases a penalty "must be submitted to the jury and found beyond a reasonable doubt." *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013). The Government counters, correctly, that these cases require proof beyond a reasonable doubt of a fact that increases *the statutory minimum or maximum sentence.* They do not apply to Guidelines calculations that, as in this case, fall within the statutory range. *See United States v. Sanchez*, 269 F.3d 1250, 1262 (11th Cir. 2001) (*Apprendi*'s "inapplicability to the Sentencing Guidelines follows from its holding."). We have rejected an interpretation of the Guidelines that would forbid courts from considering "conduct related to dismissed counts or uncharged conduct." *United States v. Thomas*, 932 F.2d 1085, 1088 (5th Cir. 1991). The existence

of unsuccessful claims (or unprosecuted claims) is thus relevant to sentencing calculations.

Finally, even if the 11 unsuccessful claims are deleted from sentencing, the total loss amount is in the same Guidelines range as the figure that the district court used.  Any error is harmless.

### B. Mass-marketing or Number of Victims

The district court enhanced Collins's sentence under U.S.S.G. § 2B1.1(b)(2)(A)(i) and (ii) because the scheme "involved 10 or more victims… or [] was committed through mass marketing."  Collins argues that the jury considered claims submitted to only eight victims and no testimony shows that he recruited through his television commercial, which he implicitly concedes constitutes a "mass marketing."  The use of mass marketing alone satisfies this enhancement.

### C. Sophisticated Means

The district court applied a two-level enhancement because the offense "otherwise involved sophisticated means."  U.S.S.G. § 2B1.1(b)(10)(C). Notwithstanding Collins's description of his fraud as a "garden variety health care fraud scheme," his scheme involved the use of multiple post office boxes opened by several different individuals, fictitious chiropractic clinics, for which assumed name certificates were obtained, pre-paid cell phones used to respond to claim inquiries, fake medical records, and fake entities and addresses.  The Application Notes to the Guideline give as examples of sophisticated means "hiding assets or transactions" . . . "the use of fictitious entities [or] corporate shells[.]" U.S.S.G. § 2B1.1, cmt. 9.(B).  The scheme for which the jury convicted Collins falls squarely within the sophisticated means enhancement.

### D. Obstruction of Justice/Double Counting

The district court found that Collins's sentence was subject to a two-level enhancement for obstructing justice.  Collins complains that this twice puts

him in jeopardy, because the Count Nine witness tampering conviction is based on the same underlying conduct. To the contrary, the two-level enhancement falls within the express terms of Application Note 8 to U.S.S.G. § 3C1.1, because the witness tampering count had already been grouped for sentencing with Collins's conspiracy and mail fraud counts. This amounted to one sentence enhancement for witness tampering, not a double-counting at all.[9]

## CONCLUSION

The evidence is sufficient to uphold both Appellants' convictions on all counts and the myriad legal challenges fail. The judgments of conviction and Collins's sentence are **AFFIRMED**.

---

[9] Collins's objection that the trial court did not comply with Fed. R. Crim. Proc. 32 in evaluating his objections to the PSR is meritless.