IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 93-9056
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS HILL,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Texas
(3:93-CR-187-R(06))
_____

(January 9, 1995)


Before WHITE, Associate Justice (Ret.);[1] BARKSDALE, and PARKER,
Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Carlos Hill, who pleaded guilty to conspiracy to commit wire
fraud, challenges his sentence on two bases: first, it being
consecutive to, rather than concurrent with, an undischarged
sentence of imprisonment imposed by a federal court in New Jersey
for an unrelated offense (the district court relied upon Sentencing
Guidelines § 5G1.3(c), p.s., but we conclude that § 5G1.3(a)

_____

[1]    The Honorable Byron R. White, Associate Justice of the
United States Supreme Court, (Ret.), sitting by designation,
pursuant to 28 U.S.C. § 294(a).

applies; it requires a consecutive sentence); and second, the amount of loss used in calculating his offense level. We **AFFIRM**.

## I.

Indicted on 14 counts, Hill pleaded guilty to the first: conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 371 and 1343. The factual basis for the plea may be briefly summarized as follows. Between May and December 1990, co-defendant David Arthur Lloyd represented to Hill that a person (fictitious) owned Government National Mortgage Association (GNMA) securities, and had executed a trust agreement, assigning the securities to Lloyd or his company, as trustee. Lloyd obtained valid GNMA pool numbers and used them to create the necessary documents, such as negotiable promissory notes and pledge agreements. Hill, who became aware of the fraudulent nature of the scheme, agreed with Lloyd to "rent" the GNMA securities to individuals or companies who needed assets for use as collateral, or to enhance their balance sheets.

In December 1993, the district court sentenced Hill to 57 months imprisonment, with the sentence to run consecutively to a prior undischarged sentence of imprisonment imposed by a federal court in New Jersey for an unrelated offense.

## II.

Of course, one of the few bases for setting aside a sentence is if it resulted from "an incorrect application of the ... guidelines". 18 U.S.C. § 3742(a)(2); *e.g.*, *United States v. Mathena*, 23 F.3d 87, 89 (5th Cir. 1994). Along that line, Hill claims misapplication by the district court in two respects:

- 2 -

imposing a consecutive sentence; and using an incorrect amount of loss for calculating his offense level. We review the district court's interpretation and application of the Guidelines *de novo*; its findings of fact, for clear error. *E.g.*, **United States v. Wimbish**, 980 F.2d 312, 313 (5th Cir. 1992), *cert. denied*, ___ U.S. ___, 113 S. Ct. 2365 (1993), *abrogated in part on other grounds*, **Stinson v. United States**, ___ U.S. ___, 113 S. Ct. 1913 (1993).

## A.

Guidelines § 5G1.3 governs imposition of a sentence on a defendant subject to an undischarged term of imprisonment for another offense. Hill contends that the district court misapplied the section by imposing a sentence consecutive to -- rather than concurrent with -- his New Jersey sentence. He maintains that § 5G1.3(c), p.s. requires the district court to conduct the analysis described in note 3 of the commentary to determine whether a consecutive sentence was a "reasonable incremental punishment for the instant offense"; that the analysis would have compelled a concurrent sentence; but that the court failed to perform it.[2]

---

[2] Section 5G1.3(c), designated as a policy statement, provides that, in cases in which subsections (a) and (b) are inapplicable, "the sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense." Its commentary states:

> To the extent practicable, the court should consider a reasonable incremental penalty to be a sentence for the instant offense that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed under §5G1.2 (Sentencing on Multiple Counts of Conviction) had all of the offenses been federal offenses for which sentences were being

The Government responds that § 5G1.3(a), not § 5G1.3(c), p.s., is applicable.[3]  Section § 5G1.3(a) provides that

> [i]f the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.

U.S.S.G. § 5G1.3(a).[4]  Its commentary explains that

> [u]nder subsection (a), the court shall impose a consecutive sentence where the instant offense *(or any part thereof)* was committed while the defendant was serving an undischarged term of imprisonment or after sentencing for, but before commencing service of, such term of imprisonment.

U.S.S.G. § 5G1.3, comment. (n.1) (emphasis added).[5]

For purposes of § 5G1.3(a), the "instant offense" is the Dallas conspiracy, which lasted from June 1, 1989, through June 25,

---

imposed at the same time.

U.S.S.G. § 5G1.3, comment. (n.3).

[3]    In the alternative, the Government asserts that the commentary to § 5G1.3(c), p.s. is not binding, and that the district court exercised its discretion properly in imposing a consecutive sentence.  *See* note 9, *infra*.

[4]    Hill was sentenced for the Dallas conspiracy on November 5, 1993.  Accordingly, we apply the 1993 version of the Guidelines, which became effective on November 1, 1993.  *See* U.S.S.G. § 1B1.11(a) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced.").

[5]    "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."  **Stinson v. United States**, ___ U.S. ___, 113 S. Ct. 1913, 1915 (1993).  Applying that standard, we conclude that the commentary interpreting § 5G1.3(a) is authoritative.

1991;[6] the "undischarged term of imprisonment" is the 20-year sentence imposed on April 3, 1991, by the federal district court in New Jersey.[7] Accordingly, as the Government points out, the Dallas conspiracy continued (*and thus part of the instant offense was committed*) after Hill was sentenced in New Jersey. Although Hill was arrested for the Dallas conspiracy on March 8, 1991, and has been incarcerated since then, his involvement in that conspiracy did not end with his arrest and incarceration, because there is no evidence that he withdrew from the conspiracy after then, or at any time prior to June 25, 1991, when the conspiracy ended. *See, e.g.*, **United States v. Puig-Infante**, 19 F.3d 929, 945 (5th Cir.) (defendant is presumed to continue involvement in conspiracy unless he makes a substantial, affirmative showing of withdrawal,

---

[6] The plea agreement states that Hill pleaded guilty to count one of the indictment, "except paragraph B (2) of count one [conspiracy to violate 18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i)]." The dates for the conspiracy are set forth in the first, unnumbered paragraph of section B of the indictment, which is covered by Hill's plea agreement. Moreover, these are the dates used in the Presentence Investigation Report; Hill did not object to them.

[7] For the New Jersey offense, Hill pleaded guilty to conspiring to associate with an enterprise conducted through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d). The charge arose from an advance fee scheme, in which Hill offered to arrange funding for loans in exchange for payment of advance fees of $25,000 to $35,000. Hill agreed to plead guilty to that offense in August 1988, and the New Jersey district court accepted his plea on April 26, 1990. In the plea agreement, the parties stipulated that the Guidelines were not in effect at the time that the offense was committed. In addition, Hill pleaded guilty to making a false statement in a January 1977 application for registration submitted to the Commodities Futures Trading Commission, in violation of 18 U.S.C. § 1001; the New Jersey district court sentenced him to five years probation for that offense.

abandonment, or defeat of the conspiratorial purpose; even after arrest and incarceration, a conspirator continues to be responsible for acts committed by co-conspirators unless he has withdrawn; and withdrawal requires commission of affirmative acts inconsistent with object of conspiracy that are communicated in a manner reasonably calculated to reach co-conspirators), *cert. denied*, \_\_\_ U.S. \_\_\_, 115 S. Ct. 180 (1994); *United States v. Killian*, 639 F.2d 206, 209 (5th Cir.) (same), *cert. denied*, 451 U.S. 1021 (1981).

"The burden of proving withdrawal from a conspiracy rests upon the defendant." *Killian*, 639 F.2d at 209. But, Hill neither asserted in district court, nor offered any evidence, that he withdrew from the Dallas conspiracy prior to being sentenced for the New Jersey offense. In any event, he relies upon the district court's finding that the Dallas offense was not committed after sentencing for the New Jersey offense.[8] As is more than well-

---

[8] In district court, the Government relied upon subsection (a) (in very summary fashion, and without reference to the above discussed well-established legal principle on withdrawal from a conspiracy); and Hill does not contest its right to assert that position here. The Government did not cross-appeal from the district court's ruling that the subsection is not applicable; nor was it required to do so. *See, e.g.*, *United States v. American Railway Express Co.*, 265 U.S. 425, 435 (1924) ("the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it"); *Hoyt R. Matise Co. v. Zurn*, 754 F.2d 560, 565 n.5 (5th Cir. 1985) ("Even though an appellee has not filed a cross appeal, he may take the position on appeal that the record supports the court's judgment on any ground, including one rejected or ignored in the lower court"). The Government is not seeking to enlarge Hill's sentence, or to otherwise alter the judgment; instead, it proffers an alternative legal theory upon which the district court's imposition of a consecutive sentence may be upheld. "Requiring conditional cross-appeals in such circumstances would

oblige the Government (and defendants in response to Government appeals of sentences) to file conditional cross-appeals reflexively, anticipating all possible appellate adjustments of the sentence in advance of knowing precisely the nature of the appellant's challenge.  That would burden appellees (and courts) with no appreciable benefit to appellate practice."  ***United States v. Bohn***, 959 F.2d 389, 394 (2d Cir. 1992) (conditional cross-appeal not required for appellate court to entertain Government's request to augment one component of a sentence on one count in response to an appellate ruling decreasing another component of the sentence on the same count).

As indicated, the Government's position on appeal is consistent with its position in the district court.  *Cf*. ***Gregory v. Missouri Pacific R. Co.***, 32 F.3d 160, 164 (5th Cir. 1994) (appellee cannot take one position before district court and urge inconsistent position on appeal).  As one of his objections to the Presentence Investigation Report, Hill asserted that § 5G1.3(a) did not apply, but without stating why.  In a letter brief filed after the sentencing hearing, pursuant to the court's directions at that hearing, the Government asserted:

> ... Hill would not have been entitled to have his sentences run concurrent to each other where the instant conspiracy continued after the date he was sentenced for the New Jersey offense.  Under § 5G1.3(a), he would be sentenced to consecutive sentences because the instant offense extended in time *after* the date he was sentenced in the New Jersey case.

(Emphasis in original.)  In its post-sentencing hearing Memorandum Opinion, rendered after receipt of the supplemental submissions from Hill and the Government, the district court found, tracking the language of § 5G1.3(a), that "[t]he Dallas offense was not committed `while the Defendant was serving a term of imprisonment ... or after [his] sentencing for' the New York/New Jersey offense, so §5G1.3(a) of the Sentencing Guidelines is not applicable."  (Emphasis, ellipsis, and brackets by district court.)

We reject Hill's assertion at oral argument that the Government's position on § 5G1.3(a) is inconsistent with a statement made by the prosecutor at sentencing.  Early in that hearing, the prosecutor stated that Hill was on probation for the New Jersey offense when he "got involved" in the Dallas conspiracy.  Later during the hearing, the prosecutor stated:

> Your Honor, let me just correct one thing.  I said Mr. Hill was awaiting sentencing at the time that

established, a factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (citation omitted).

After reviewing the record, we conclude that the district court clearly erred in finding that the instant offense was not committed, at least in part, after Hill's sentencing in New Jersey. It is undisputed that the Dallas conspiracy continued after imposition of Hill's sentence in New Jersey. (For example, as noted, consistent with Hill's guilty plea, the Presentence

---

> he committed this offense, not probation, as I stated earlier. I wanted to make the Court aware of that.

This statement is not inconsistent with the Government's position. It is undisputed that the Dallas conspiracy lasted from June 1, 1989, to June 25, 1991; Hill was not sentenced in New Jersey until April 3, 1991. Therefore, consistent with the prosecutor's statement, a large part of the Dallas offense was committed while Hill was awaiting sentencing in New Jersey. In any event, the prosecutor's statement cannot change the fact that a portion of the Dallas offense was committed after Hill was sentenced for the New Jersey offense. Furthermore, the Government's position was clarified in its letter brief filed after the sentencing hearing.

In sum, the facts necessary for application of § 5G1.3(a) (the time frame for the Dallas conspiracy and the date of Hill's sentencing in New Jersey) were before the district court, and are undisputed. The application of § 5G1.3(a) to those facts is, of course, a question of law. *See*, *e.g.*, *United States v. Cabral-Castillo*, 35 F.3d 182, 186 (5th Cir. 1994). The Government should have reminded the district court that Hill's involvement in the Dallas conspiracy is presumed to continue after his arrest and incarceration unless he made a substantial, affirmative showing of withdrawal, but this does not preclude our applying that well-established principle of law. We must, of course, follow it in determining the applicability of § 5G1.3(a).

Investigation Report states that the conspiracy lasted until June 25, 1991; Hill did not object.)  And, the record contains no evidence that Hill withdrew from that conspiracy prior to the imposition of his New Jersey sentence, or at any time prior to the conclusion of the Dallas conspiracy on June 25, 1991.

Accordingly, this case, which appears to be one of first impression, falls squarely under § 5G1.3(a).  Under that subsection, "the sentence for the instant offense *shall be* imposed to run consecutively to the undischarged term of imprisonment."  U.S.S.G. § 5G1.3(a) (emphasis added).  Although the district court concluded erroneously that § 5G1.3(a) was not applicable, and instead imposed a consecutive sentence pursuant to § 5G1.3(c), p.s., it nevertheless reached the correct result.[9]

### B.

The amount paid to Hill by those who "rented" the securities from him was approximately $800,000; but the face value of those securities was approximately $69,000,000.  The district court adopted the probation officer's calculation of a 17-level increase in Hill's offense level under U.S.S.G. § 2F1.1(b)(1)(R), based on a loss of $69,000,000.  Hill contends that the district court misapplied the Guidelines by using the $69,000,000, rather than the $800,000.  According to Hill, "because these were not real GNMA securities, there was never any risk of loss as to the face value

---

[9]    Because a consecutive sentence was imposed correctly, we do not address whether, in determining that a consecutive sentence was appropriate under § 5G1.3(c), p.s., the district court was required to perform the analysis presented in its commentary.

of the bogus securities (as there might have been had the securities been real, but stolen)."

An amount of loss finding is reviewed only for clear error. *United States v. Chappell*, 6 F.3d 1095, 1101 (5th Cir. 1993), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1232, 1235 (1994). Hill maintains, however, that the appropriate standard of review is *de novo* because it is the legal significance of the facts, not the facts themselves, that are disputed. We disagree. As hereinafter discussed, at issue is whether Hill intended a loss of the face value of the securities, a question of fact.

Needless to say, the district court is not required to determine the amount of loss with precision; "[t]he court need only make a reasonable estimate of the loss, given the available information." U.S.S.G. § 2F1.1, comment. (n.8). And, "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." U.S.S.G. § 2F1.1, comment. (n.7). When reviewing the calculation of an intended loss, we look to actual, not constructive, intent, and distinguish between cases in which "the intended loss for stolen or fraudulently obtained property is the face value of that property" and those in which the intended loss is zero because "the defendant intends to repay the loan or replace the property." *United States v. Henderson*, 19 F.3d 917, 928 (5th Cir.), *cert. denied*, ___ U.S. ___, 115 S. Ct. 207 (1994).

At sentencing, an FBI agent testified that the securities rented to Hill's victims actually existed and had a value of

$69,000,000, but that the defendants had no ownership interest in those securities. He testified further that, if Hill's clients had pledged the securities as collateral, the potential loss was $69,000,000, because the securities were worthless to Hill's clients.

Because Hill had no ownership interest in the "rented" GNMA securities, he could not have intended to replace them with GNMAs if it became necessary. *See* **Henderson**, 19 F.3d at 928. True, Hill's victims paid him approximately $800,000 in rental fees, but the purpose of the rental scheme was to allow the victims to pledge the face value of the securities ($69,000,000) as collateral for loans, or to allow them to increase the assets reflected on their balance sheets by that amount. Accordingly, we conclude that the district court did not clearly err. The "intended loss that the defendant was attempting to inflict" was the face value of the securities. *See* U.S.S.G. § 2F1.1, comment (n.7). ("For example, if the fraud consisted of selling or attempting to sell $40,000 in worthless securities, or representing that a forged check for $40,000 was genuine, the loss would be $40,000.")[10]

### III.

For the foregoing reasons, Hill's sentence is

---

[10] The district court found that $69,000,000 was the "potential" loss. Hill contends that "`potential loss' is not a permissible measure of guideline `loss.'" Although it would have been more appropriate for the district court to have referred to the loss as "intended", rather than "potential", it did not commit reversible error by so describing the loss. *See* **United States v. Hooten**, 933 F.2d 293, 298 (5th Cir. 1991) (using term "potential loss").

**AFFIRMED.**