70 F.3d 113
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Terry LITTLE, Defendant-Appellant.
 No. 94-5689.
 United States Court of Appeals, Fourth Circuit.
 Argued July 14, 1995.
Decided Nov. 15, 1995.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. William L. Osteen, Sr., District Judge. (CR-94-49)
 ARGUED: Robert W. Mance, III, MUNDY, HOLT & MANCE, Washington, D.C., for Appellant. David Bernard Smith, Assistant United States Attorney/Senior Litigation Counsel, Greensboro, North Carolina, for Appellee. ON BRIEF: Walter C. Holton, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.
 Before ERVIN, Chief Judge, and BUTZNER and PHILLIPS, Senior Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 A jury convicted James T. Little of conspiracy to import heroin in violation of 21 U.S.C. Sec. 963. Little contends that the admission of other crimes evidence pursuant to Fed.R.Evid. 404(b) constituted an abuse of discretion. He also claims that the court wrongfully denied his motions for a judgment of acquittal and for an instruction on multiple conspiracies. Finally, Little argues that the court erred by incorrectly calculating the amount of drugs to be considered under the guidelines and by violating the requirements of Fed.R.Crim.P. 32(c)(3)(D). Finding no error, we affirm.
 
 
 2
 * Little was charged with conspiracy to import heroin into the United States. Among Little's coconspirators were Donna Blalock and Little's cousin, Wendell Ingram. The heroin conspiracy lasted from June 1993 to January 1994.
 
 
 3
 Little first became involved in the conspiracy when Ingram asked him whether he knew of anyone who would travel to Africa to bring some "stuff" back into the United States. Ingram told Little that he would receive $5,000 for supplying a courier. Little arranged for Blalock and Ingram to meet, later telling Blalock that she would be paid $15,000 in return for her services. He also suggested that she use some of the money to buy extra heroin which the two of them could sell on their own.
 
 
 4
 At trial the judge allowed Blalock to testify pursuant to Rule 404(b) that two or three times prior to joining the heroin conspiracy, she transported cocaine and "crack" from Washington, D.C., to North Carolina for Little. The court also permitted Blalock to testify that she continued her courier activities for Little in conjunction with preparing to travel to Africa.
 
 
 5
 In June 1993, Little drove Blalock from North Carolina to Washington, D.C. After arriving in Washington, Little drove Blalock to the passport office and helped her complete the passport application by filling in the local address of his ex-wife. Little then drove Blalock to a Maryland motel where she met with Ingram and the other coconspirators. On her return trip to North Carolina, she carried three or four ounces of cocaine for Little.
 
 
 6
 In August 1993, Little drove Blalock from North Carolina to Washington, D.C., to enable her to get the required inoculations for her trip to Africa. When returning to North Carolina, Blalock carried two ounces of cocaine provided by Little.
 
 
 7
 In October 1993, Little drove Blalock from North Carolina to Washington, D.C., a third time so that Blalock could apply for a visa to enter Africa. While in Washington she stayed with Little's ex-wife. She once again returned to North Carolina with crack and powder cocaine for Little.
 
 
 8
 In November 1993, Little arranged a meeting between Ingram and Blalock in North Carolina so that Ingram could drive Blalock to the Atlanta airport to board a plane to Africa. Before Blalock left North Carolina, Little gave her $1000, which he subsequently took back.
 
 
 9
 Two weeks later, Blalock was arrested when she attempted to return to the United States carrying a cache of heroin. She later contacted Little and asked for money. Little then accompanied Ingram as Ingram offered her $500.
 
 
 10
 The jury convicted Little on one count of conspiracy to import heroin. The presentence report calculated Little's base offense level of 36 by adding to the heroin the quantity of cocaine that Blalock transported from Washington, D.C., to North Carolina for Little. Because the district court declined to grant Little's request for a reduction as a minor or minimal participant, the guideline range for imprisonment was 324 to 405 months. The court sentenced Little to 364 months.
 
 II
 
 11
 Viewed in the light most favorable to the government, the evidence is sufficient to sustain the verdict of guilty, and the court did not err by denying Little's motion for a judgment of acquittal. See Glasser v. United States, 315 U.S. 60, 80 (1942).
 
 
 12
 We also conclude that the court did not err by admitting testimony that on several occasions Blalock carried cocaine for Little when she returned to North Carolina from Washington. Treating this evidence as admissible under Rules 404(b) and 403, the district court gave an exemplary limiting instruction when the evidence was introduced. Subsequently, as the evidence fully disclosed the roles of Little and Blalock, it became apparent that the trips to and from Washington were intertwined with the importation conspiracy. Little's activity was necessary to achieve the conspirator's goal. Blalock's transportation of cocaine from Washington on Little's behalf demonstrated the trust relationship among the participants and showed that her selection as a courier was part of a well-defined plan. Admission of this evidence under Rule 404(b) was within the district court's discretion. See United States v. McMillon, 14 F.3d 948, 954-55 (4th Cir.1994). As the government notes, Blalock's testimony was also admissible as substantive evidence of the importation conspiracy. See United States v. Kennedy, 32 F.3d 876, 885-86 (4th Cir.1994).
 
 
 13
 Little next claims that the district court wrongly denied his request for an instruction on multiple conspiracies. He asserts that there were two independent conspiracies.
 
 
 14
 We have held that "[a] court need only instruct on multiple conspiracies if such an instruction is supported by the facts." United States v. Mills, 995 F.2d 480, 485 (4th Cir.1993). A review of the record convinces us that the district court properly determined that the instruction was not warranted on the facts of this case.
 
 III
 
 15
 Little protests his sentence on several grounds. He argues that the court erred in not granting him a reduction as a minor or minimal participant under Guideline Sec. 3B1.2.
 
 
 16
 The district court's determination regarding Little's role in the offense must be upheld on appeal unless it was clearly erroneous. United States v. Gordon, 895 F.2d 932, 934-35 (4th Cir.1990). Little's recruitment of a courier and his assistance in obtaining the necessary passport, visa, and immunization inoculations for the courier were indispensable to the importation scheme. The district court properly ruled that he was not a minor or minimal participant.
 
 
 17
 Little claims that the court erred in including the cocaine Blalock transported from Washington, D.C., to North Carolina when calculating the amount of drugs attributable to Little under the guidelines.
 
 
 18
 When calculating a defendant's base offense level, a court may consider relevant conduct that was "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. Sec. 1B1.3(a)(2). Here, the district court determined that the transportation of cocaine was part of the same course of conduct, namely Blalock's transport of illegal drugs for Little. A court's determination of the quantity of drugs attributable to a defendant is a factual issue reviewed for clear error. United States v. Mark, 943 F.2d 444, 450 (4th Cir.1991). To be considered part of the same course of conduct as the charged offense, uncharged offenses must be "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. Sec. 1B1.3, comment (n.9(B)). In making this determination, the relevant factors are the "similarity, regularity and temporal proximity between the offense of conviction and the uncharged conduct." United States v. Mullins, 971 F.2d 1138, 1144 (4th Cir.1992).
 
 
 19
 The cocaine trafficking scheme was inextricably linked to the heroin conspiracy. It was also sufficiently similar. Little and Blalock had an ongoing dealer-courier relationship that characterized their involvement in both schemes. Little originally brought Blalock into the conspiracy because of this relationship. Little's use of Blalock as a courier provides the requisite connection between the cocaine and the heroin conspiracy. The fact that one scheme involved cocaine and the other heroin is relevant, but not dispositive. The common elements are sufficient. The district court did not err in attributing the cocaine to Little for sentencing purposes.
 
 
 20
 We find no merit in the claim that the district court did not comply with Fed.R.Crim.P. 32(c)(3)(D). After hearing extensive argument about the presentence report, the district court noted that it would not consider several parts in sentencing Little, and it overruled Little's other objections, giving its reasons. It then adopted the report. A fair reading of the sentencing transcript discloses that the court's adoption of the report was implicitly subject to its comments and rulings about specific parts of the report. This procedure satisfies the rule. Cf. United States v. Morgan, 942 F.2d 243, 245 (4th Cir.1991).
 
 
 21
 AFFIRMED.