**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 95-10325

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

J. D. TEDDER,

Defendant-Appellant.

_____

Appeal from United States District Court
for the Northern District of Texas

_____

April 15, 1996

Before LAY[*], HIGGINBOTHAM and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Pursuant to a plea agreement, Tedder pled guilty to one count of fraudulent use of a social security number, 42 U.S.C. §408(a)(7)(B), and one count of aiding and abetting, 18 U.S.C. §2 for selling fraudulent social security numbers and counseling individuals with poor credit on how to submit fraudulent loan applications based on the phony numbers. The district court adopted the probation department's findings in the Presentence Report (PSR), and sentenced Tedder to a term of thirty months, based on a potential loss of $865,643.99. Tedder appeals his sentence, contending that the calculation should have been based on "actual" loss under U.S.S.G. §2F1.1. Finding no error, we AFFIRM.

**FACTS**

Tedder was in the business of counseling people with poor credit. For a fee, Tedder provided his clients with false social security numbers and gave them instructions on how to apply for loans

_____

[*]Circuit Judge of the Eighth Circuit, sitting by designation.

using those numbers. As a result, many of Tedder's clients were able to qualify for car loans and mortgages for which they would not otherwise have qualified. Tedder did not know whether his clients would fulfill their contractual obligations with the lenders, though he gave them specific instructions to pay their bills on time and not to lie to any governmental agency.

The original PSR calculated a total offense level of 11 and noted a guideline range of 12 to 18 months of imprisonment. Based on further investigation and an updated Victim Impact Statement, an amendment to the PSR raised that offense level to 16 and a guideline range of 27-33 months. The recommendation, as amended, was based on a "potential loss amount" of $865,643.99 in loans applied-for. Loans were granted in the amount of $735,878.99, and the realized loss at the time of amending the PSR was $21,681.55. Tedder disputes the 30 month sentence, arguing that the loss should have been based on the actual loss of $21,681.55, and that the amended PSR calculation significantly overstates the seriousness of his conduct because it included loans applied-for but never approved, loans that were current, loans secured by collateral, and loans applied-for by individuals not named in any of the counts.

## DISCUSSION

The calculation of the amount of loss is a factual finding, reviewed for clear error. *United States v. Wimbish*, 980 F.2d 312, 313 (5th Cir. 1992), *cert. denied*, __ U.S. __, 113 S. Ct. 2365, 124 L.Ed. 2d 272 (1993). However, the interpretation and application of the Guidelines is reviewed de novo. *United States v. Hill*, 42 F.3d 914, 916 (5th Cir.), *cert. denied* __U.S. __, 116 S. Ct. 130, 113 L. Ed. 2d 790 (1995).

The sum and substance of this appeal is how U.S.S.G. §2F1.1 applies to Tedder's fraudulent scheme. Section 2 F1.1(b)(1)(A)-(S) provides for incremental increases in the offense level depending on the amount of loss. Comment (n.7) provides that loss is the value of the thing unlawfully taken. *Id*. In a fraudulent loan application case, " the loss is the actual loss to the victim or if the loss has not yet come about, the expected loss." *Id.* at comment (n.7(b)). However, "where the intended loss is greater than the actual loss, the intended loss is to be used." *Id.* The next

2

paragraph of the comment delineates a 'ballpark' provision: "Where the loss determined above significantly understates or overstates the seriousness of the defendant's conduct, an upward or downward departure may be warranted." U.S.S.G. §2F1.1 comment (n.7(b)).

Tedder argues that the higher calculation based on "intended" loss is inappropriate because he lacked the intent to defraud lenders, as evidenced by his instructions to his clients "not [to] lie to the government and to pay their bills on time." He contends that the actual loss should have been measured by subtracting the amounts the lending institutions can expect to recover or have recovered from the amount of the loans not likely to be repaid at the time the offense was discovered, as indicated in comment n.7(b)'s instructions calculating actual loss.

The amount of loss in a fraudulent loan application case is factually dependant. Where the defendant intends to repay the loans, then actual loss, rather than intended loss, is the appropriate basis for calculating loss under §2F1.1. *United States v. Henderson*, 19 F.3d 917 (5th Cir.), *cert. denied* __ U.S. __, 115 S. Ct. 207, 130 L. Ed. 2d (1994). However, where the defendant does not intend to repay, and the actual loss is less than the intended loss, only because law enforcement official thwarted his plans, then the full intended loss is the appropriate basis for calculation. *United States v. Brown*, 7 F.3d 1155, 1159 (5th Cir. 1993).

The defendant's conduct is similar to that of the defendant in facts in the case *sub judice* in *United States v. Hill*, 42 F.3d at 919. Hill "rented" faked securities to individuals and companies who wanted to dress-up their balance sheets. He received in rent a much smaller amount than the face value of the securities. The securities pledged in <u>Hill</u> had no value and there was no evidence presented to show that the defendant intended to repay the loans. This Court held that the "intended" loss for Guidelines purposes was the face value of the securities, not the "actual" amount received in rentals because the purpose of the scheme was to allow the victims to pledge the face value of the securities as collateral for loans, or to allow them to increase the assets reflected on their balance sheets by that amount. *Hill*, 42 F.3d at 919.

The purpose of Tedder's scheme was to allow his clients to fraudulently obtain loans to the

full extent of the amounts requested in the loan applications. Tedder's clients were therefore at risk to jeopardize their financial st ability to the full amount of the loan requested. Tedder's and Hill's schemes put the clients, as well as the loan institutions, in precarious financial situations. Furthermore, both schemes enabled the defendants' clients to cheat loan institutions, and one of Tedder's clients also cheated an innocent victim of his good credit standing. Like Hill, Tedder sold his expertise, his research, and his fraudulent product specifically for the purpose of enabling his clients to obtain fraudulent loans. Although the banks had received repayment on some of the loans, there is no evidence that the defendant had any control over any such repayment and therefore, as in Hill "he could not have intended to replace them... if it became necessary." Because Tedder had no control over repayment of the loans, his argument that he intended the loan to be paid is unpersuasive. Thus, we find that the intended, rather than the actual amount of the loss is the appropriate measure for guidelines purposes.

At sentencing, the lower court adopted the facts as detailed in the amended PSR, and Tedder offered no rebuttal evidence to refute any of the Victim's Impact Statement's findings upon which the calculation of the offense level was based. A court is justified in relying on information provided in a PSR where it has an adequate evidentiary basis. *United States v. Mir.*, 919 F.2d 940, 943 (5th Cir. 1990). The trial court found it a reasonable inference from the information given that a very large percentage, if not one hundred percent, of the amount lent either had or would at some point go into default, and that it was problematic that there would be any substantial recovery. Thus, the trial court implicitly found that the seriousness of Tedder's crime justified the calculation of the loss based upon the total of the loan amounts applied for. Finding no error of fact or law, the sentence as imposed by the lower court is AFFIRMED.

4