**UNITED STATES of America,**

**v.**

**Quinton Lee PHILLIPS, Defendant.**

**Crim. Action No. 96–0002–C.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

Feb. 7, 1997.

---

Frederick Theodore Heblich, Jr., Parker, McElwain & Jacobs, P.C., Charlottesville, VA, for Bruce W. Phillips, Sr.

Yvonne T. Griffin, Tucker & Associates, Charlottesville, VA, for Quinton Lee Phillips.

Steven David Rosenfield, Charlottesville, VA, for Alfred Bruce Phillips.

Jean Barrett Hudson, U.S. Attorney's Office, Charlottesville, VA, for U.S.

*MEMORANDUM OPINION*

MICHAEL, Senior District Judge.

In January 1996, a grand jury returned a six count indictment against six defendants; two counts of the indictment charged Defendant Quinton Lee Phillips with violating federal law. Count One of the indictment charged defendant with conspiring to manufacture, distribute, and possess with intent to distribute marijuana, in violation of 21 U.S.C. § 846. The conspiracy spanned from approximately January 1979 to January 1996, and involved five codefendants, who were also defendant's family members (Defendants Bruce W. Phillips, Sr., Nettie Phillips, Bruce W. Phillips, Jr., Helen A. Phillips, and Alfred Bruce Phillips). Count Six of the indictment was a money laundering charge, alleging a violation of 18 U.S.C. § 1956(a)(1)(B)(i). The remaining counts contained charges against defendant's five family members, but not defendant. Pursuant to a plea agreement, entered into on September 9, 1996, defendant pleaded guilty to Count One (hereinafter "marijuana conspiracy count") of the January 1996 Indictment.

Previously, in June 1993, a grand jury returned a three count indictment against defendant in June 1993. This former indictment charged defendant with distributing marijuana in violation of 21 U.S.C. § 841(a)(1) (Counts One and Two) and with distributing cocaine base, or "crack," in violation of 21 U.S.C. § 841(a)(1) (Count Three). According to this indictment, these offenses took place in February and March 1992. Defendant pleaded guilty to Count Three (hereinafter "crack count") on November 29, 1993. For this offense, defendant was sentenced to 60 months in prison, which sentence he was serving when the grand jury returned the January 1996 Indictment against defendant.

For the purpose of sentencing defendant for the offense charged in Count One of the January 1996 Indictment, the court directed that a sentencing hearing be scheduled and that a pre-sentence report be prepared. At the hearing, counsel for the United States and counsel for defendant informed the court that during plea negotiations they had not been able to reach agreement on the question whether the law required that the sentences for the crack count and the marijuana conspiracy count to run concurrently. Defendant answered in the affirmative, and the United States disagreed. The pre-sentence report, prepared by the United States Probation Office, effectively resolved the issue in favor of defendant. The United States objected to the pre-sentence report, and the court heard oral arguments on the matter. Because the court concluded that written submissions by the parties would aid the decisional process, it postponed its ruling to permit the parties to file briefs in support of their respective positions. The parties have now filed their briefs with the court, and, accordingly, the matter is ripe for resolution. For the reasons stated below, the court concludes that the law does not require that defendant's sentences be served concurrently; to the extent the pre-sentence report states to the contrary, it is overruled.

I.

The crucial issue of dispute is whether defendant's conviction on the crack count

qualifies as "relevant conduct" to the marijuana conspiracy count within the meaning of the United States Sentencing Guidelines. *See* U.S.S.G. §§ 1B1.3, 4A1.2. If the crack count qualifies as "relevant conduct," the crack conviction must figure into the computation of the base level offense of the marijuana conspiracy conviction. *Id.* The presentence report takes into account the crack defendant distributed in determining the amount involved and thus the base level offense for the marijuana conspiracy conviction. If the court were to follow the pre-sentence report, the court would be required, under § 5G1.3(b), to impose a sentence for the marijuana conspiracy conviction that would run concurrently to defendant's sentence for the crack conviction. On the other hand, if the crack count does not constitute "relevant conduct" to the instant offense, it must be treated as a "prior sentence" under § 4A1.2. Pursuant to § 4A1.2, the crack conviction, as a "prior sentence," would not factor into the computation of the base level offense for the marijuana conspiracy conviction (contrary to the pre-sentence report). As a consequence, defendant would be sentenced either pursuant to § 5G1.3(a) or under § 5G1.3(c). Section 5G1.3(a) requires the court to impose a sentence that runs consecutively to the defendant's undischarged term of imprisonment; it applies when the defendant "committed the instant offense while ... serving a term of imprisonment...." Section 5G1.3(c) is the default provision—it governs when neither § 5G1.3(a) nor § 5G1.3(b) apply; it permits the court to impose a sentence that runs concurrently, partially concurrently, or consecutively to the sentence defendant is currently serving.

## II.

Section 4A1.2 defines the term "prior sentence" as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense." Application Note 1 states that "[a] sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense. Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3." Section 4A1.2 and its accompanying application note bring the court to § 1B1.3, which defines "relevant conduct."

"Relevant conduct" under § 1B1.3 includes acts "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." § 1B1.3(a)(1). For offenses that must be grouped under § 3D1.2(d), relevant conduct also encompasses acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction." § 1B1.3(a)(2). Thus, the court is led to § 3D1.2(d), which directs that multiple counts should be grouped if "the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm,...." Because, ordinarily, the quantity of the substance largely determines the offense level for a drug offense, the definition for relevant conduct in § 1B1.3(a)(2) applies to defendant, who was convicted of drug offenses.[1]

█ Clearly, defendant's crack conviction does not qualify as relevant conduct within the meaning of § 1B1.3(a)(1). Defendant did not distribute crack in preparation for the marijuana conspiracy, and he did not do so to avoid detection of or responsibility for the marijuana conspiracy. Defendant can only

---

1. The United States argues that § 1B1.3(a)(2) does not apply here because *"[g]rouping of counts from one indictment, as would trigger [§] 3D1.[2,] is not what is before the [c]ourt."*. That this argument must be rejected is made clear by the plain language of § 1B1.3(a)(2), as well as its application notes, which expressly state that "the applicability of subsection (a)(2) does not depend upon whether multiple counts are alleged. Thus, in an embezzlement case, for example, embezzled funds that may not be specified in any count of conviction are nonetheless included in determining the offense level if they were part of the same course of the same course of conduct or part of a common scheme or plan as the count of conviction." *Background*, ¶ 3; *see United States v. Windom*, 82 F.3d 742, 746 (7th Cir.1996).

be said to have distributed crack during the commission of the marijuana conspiracy insofar as the crack distribution fell into the seventeen year time period during which the marijuana conspiracy spanned. The court interprets the sentencing guidelines to require a far less tenuous connection before the guidelines deem one offense to have occurred during the commission of another offense. For example, a person who robs a bank, and in the process kills the bank teller, has committed a murder during the commission of a bank robbery within the meaning of § 1B1.3(a)(1). Section 1B1.3(a)(2) requires a more extensive analysis. The question posed pursuant to § 1B1.3(a)(2) is whether the crack distribution by defendant was "part of the same course of conduct or common scheme or plan" as defendant's involvement in the marijuana conspiracy.

The court seeks guidance from Application Note 9, which elaborates on the meaning of "common scheme or plan" and "same course of conduct." Application Note 9 provides as follows:

(A) *Common scheme or plan.* For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi.* . . .

(B) *Same course of conduct.* Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses. Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses. When one of the above factors is absent, a stronger presence of at least one of the other factors is required. . . .

*Id.*

Defendant argues that he falls within the definition of § 1B1.3(a)(2), as it is explained in Application Note 9, because (1) the sales of crack and marijuana that led to defendant's arrests were made to the same confidential informant, whom (according to earlier representations to the court) defendant suspects to be his estranged wife, Dawn Phillips; (2) both sales to the confidential informant were made from defendant's home; and (3) the sales were near each other temporally. In focusing on these limited similarities, defendant forgets the wide gulf that separates the marijuana conspiracy and crack convictions. The marijuana conspiracy to which defendant pleaded guilty spanned a period of more than fifteen years. From the evidence submitted by the government arises the inescapable conclusion that from January 1979 to January 1996, the life of defendant and his family members was preoccupied almost entirely with and revolved around the cultivation and distribution of marijuana. As an annual ritual, defendant and his family members planted marijuana; to avoid detection, they planted it in widely scattered patches; after harvesting, defendants hid the marijuana in different places on their family property. Sales were made to regular customers, and sometimes, in lieu of cash, firearms were accepted as compensation.

Neither the government nor defendant has presented any evidence whatever to suggest that the marijuana conspiracy extended to crack distribution or at any time touched upon crack in any way. No evidence has been offered to implicate any other codefendant in crack distribution. The crack count to which defendant pleaded guilty involved only an isolated sale of crack to a single individual. Although that same individual had also purchased marijuana from defendant, given the duration of the marijuana conspiracy it can safely be assumed that countless others purchased marijuana from defendant as well; indeed, as discussed above, defendant and his family served a circle of regulars.

Defendant presses that drugs are drugs, urging that the Sentencing Guidelines essentially equate all drugs because they provide a regime for equalizing different drugs, in terms of weight, for sentencing purposes

(e.g., 1 gram of crack is equal to 20 kilograms of marijuana). § 2D1.1, Application Note 10.d. The court has little trouble in agreeing that in many, if not most, cases one drug offense will qualify as relevant conduct to another drug offense involving a different drug. But this is not the ordinary case. Here, marijuana was the conspiracy's heart and soul; marijuana gave the conspiracy its life; there was no other support system. Moreover, the Fourth Circuit has recognized that differences in drug types may be important in a § 1B1.3(a)(2) analysis. *See United States of America v. Little,* 70 F.3d 113, 1995 WL 678203, * 3 (4th Cir.1995) (per curium) (unpublished opinion) (cited not for precedential value but for its reasoning) ("The fact that one scheme involved cocaine and the other heroin is relevant [under § 1B1.3(a)(2) ] but not dispositive."). Here, the difference in drug types is of paramount significance, because the object and subject of the conspiracy was marijuana, not marijuana and crack (or any other drug).

Nonetheless, defendant maintains that the court must, for the sake of consistency, find that the crack conviction is relevant conduct to the marijuana conspiracy conviction. Directing the court's attention to the pre-sentence report relied upon by the sentencing court in connection with his crack conviction, defendant points out that marijuana distribution (charged in Counts One and Two of the June 1993 Indictment) was considered to be relevant to the crack distribution. Defendant overlooks the difference in this case: the charge to which defendant pleaded guilty is a conspiracy charge, not a simple distribution charge. Whether a marijuana distribution is relevant conduct to a conviction for crack distribution does not translate into the question whether a crack distribution is relevant conduct to a conspiracy whose purpose was to cultivate and sell marijuana.

The court finds that regardless of the answer to the former question (posed above),

the answer to the latter question must be that the crack distribution and marijuana conspiracy were not part of a common scheme or plan; nor can the two offenses be characterized as part of the same course of conduct.

### III.

Therefore, defendant's sentence is governed by either § 5G1.3(a) or § 5G1.3(c). Section 5G1.3(a) applies if defendant committed the instant offense (the marijuana conspiracy) while he was serving his sentence for the crack offense. Defendant was sentenced for the crack offense in 1993. According to Count One of the January 1996 Indictment, to which count defendant pleaded guilty, defendant was engaged in the conspiracy from January 1979 to January 1996. From the face of the indictment, it appears that defendant was engaged in criminal activity for two to three years after he was sentenced for the crack offense. Thus, part of the instant offense was committed while defendant was serving his sentence for the crack offense.

▬▬ The Fifth Circuit has held that a defendant who has not shown that he abandoned or withdrew from a conspiracy even after arrest, conviction, and incarceration, is governed by § 5G1.3(a). *United States v. Hill,* 42 F.3d 914, 916–18 (5th Cir.1995). Thus, under *Hill,* a defendant who has committed even a part of the offense with which he is charged while incarcerated falls within § 5G1.3(a).[2] At first blush, a conclusion that an incarcerated individual continues to engage in a conspiracy may seem counterintuitive; the conclusion follows, however, as a matter of course from the law defining the point at which a conspiracy terminates. A defendant "is presumed to continue involvement in a conspiracy unless that defendant makes a substantial affirmative showing of withdrawal, abandonment, or defeat of the conspiratorial purpose." *United States v.*

---

**2.** The Fifth Circuit applied the 1993 version of the sentencing guidelines in *United States v. Hill,* 42 F.3d 914 (5th Cir.1995). In the 1993 version, the application notes accompanying § 5G1.3 stated that "[u]nder subsection (a), the court shall impose a consecutive sentence where the instant offense *(or any part thereof)* was committed while the defendant was serving an undischarged term of imprisonment. . . ." Application

Note 1 (emphasis added). This court must apply the 1995 version of the guidelines, and the application notes no longer contain the italicized phrase quoted above. This deletion does not, however, change the meaning of § 5G1.3(a); clarification is the only purpose offered by the explanatory notes accompanying the amendment which deleted this phrase. Guidelines Manual, Amendment No. 535.

*Puig–Infante,* 19 F.3d 929, 945 (5th Cir.1994) (internal quotations and citations omitted). Hence, "[a] member of a conspiracy continues to be responsible for acts committed by coconspirators even after the former's arrest unless he has withdrawn from the conspiracy." *Id.* (internal quotations and citations omitted). To defeat the presumption of continued participation and to avoid responsibility for coconspirators' actions, the defendant must show that he affirmatively acted in a manner inconsistent with the purpose of the conspiracy and that the action was reasonably calculated to alert his coconspirators. *Id.* Incarceration alone does not qualify as an affirmative act demonstrating abandonment of the conspiracy. *Id.*

In this case, defendant has thus far made no attempt to satisfy the burden of showing that his participation in the conspiracy ended before or with his arrest or his incarceration. Of course, the court will give defendant and his counsel the opportunity to meet the required showing at the sentencing hearing. If defendant fails to meet his required burden, the court will sentence defendant under § 5G1.3(a). If defendant succeeds in establishing that his participation in the conspiracy terminated when defendant was imprisoned, the court will sentence defendant under § 5G1.3(c).

### IV.

The necessity for the convoluted and intertwined discussion of guidelines issues set out above is a prime example of the judicial and party workloads imposed by the guidelines. Countless hours have been spent on this exercise, six to seven hours of which have been judicial time. Resolution of the issues here could well have been reached by ordinary reliance on the discretion of the judge to fashion an appropriate sentence. "Judicial economy," thy name is not to be found in Guideline Sentencing.

Nonetheless, to the extent the pre-sentence report is contrary to this Memorandum Opinion, it is overruled.

An appropriate Order shall this day issue.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this day ADJUDGED AND ORDERED that:

(1) The United States' objections to the pre-sentence report shall be, and they hereby are, sustained.

(2) To the extent the pre-sentence report indicates that defendant's crack conviction qualifies as "relevant conduct" within the meaning of U.S.S.G. § 1B1.3(a)(2), the pre-sentence report shall be, and it hereby is, overruled.

(3) In accordance with the plea agreement, the base level offense indicated in the pre-sentence report (28) shall remain unchanged.

(4) Upon receiving this Order and accompanying Memorandum Opinion, the parties are directed to contact the Clerk of the Court to schedule a sentencing hearing.

The Clerk of the Court is hereby directed to send a certified copy of this Order and accompanying Memorandum Opinion to all counsel of record.