EMILIO M. GARZA, Circuit Judge,
concurring in part and dissenting in part:
A man walks into a bank to apply for a $232,000 loan. A bank loan officer hands the man a form, which requires the man to disclose his assets and liabilities. The man stares at the form, pondering his recent debts and cash flow problems: $4,000 owed to a different bank; $9,300 owed to assorted credit card companies; approximately $25,000 owed to friends; and a cash flow deficit of over $60,000. This man has not seen “black” in his credit report for quite some time. The man presumes that the bank will not look too kindly on this financial situation, so he “fudges” a bit on the loan application. He neglects to report many of his debts, states that he has a positive cash flow, and hands the form back to the bank loan officer.
Looking at this picture, do we think that this man believes he can pay back a $232,000 loan? More to the point, is it “plausible” to conclude that this man does not believe he can repay the loan, and therefore does not intend to repay it? Of course it is.
The district court in the instant case was presented with a set of facts almost identical to the above scenario. Based on that (and other) evidence, the court concluded, plausibly enough, that Cecil Allen Sanders (“Sanders”) did not intend to repay a $232,000 loan from Plano Bank and Trust (“the Bank”). The majority opinion, however, asserts that the district court dearly erred in making this determination. For that reason, the majority opinion holds that the district court erred in using the $232,000 figure to determine Sanders’s sentence. Although I agree with much of the majority opinion (the part that affirms Sanders’s conviction), I cannot concur in the opinion’s decision to reverse Sanders’s sentence.
The majority opinion rests its conclusion that the district court erred in sentencing Sanders on two separate grounds. First, the majority opinion holds that the district court could not consider the $232,000 loan at all, because the Government did not include this loan in Sanders’s indictment.[1] *529 Second, the majority opinion concludes that the district court clearly erred in using the $232,000 figure to calculate Sanders’s sentence because the evidence shows that Sanders intended to repay the loan. Neither conclusion, in my view, can be reconciled with our precedent.
I
The present case involves the district court’s application of Sentencing Guideline § 2F1.1. That provision states that a district court should increase the sentence of a defendant who has committed certain crimes (including bank fraud) in proportion to the financial loss caused by the defendant. See U.S. SentenCing Guidelines Manual § 2Fl.l(b)(l). For purposes of this guideline, the relevant “loss” is generally the actual or expected loss to the victim. Id., cmt. n. 7(b). However, § 2F1.1 provides that “where the intended loss is greater than the actual loss, the intended loss is to be used.” Id. In the present case, the district court found, by a preponderance of the evidence, that Sanders did not intend to repay the $232,000 loan. Therefore, the court found, as a matter of fact, that Sanders intended to cause a loss of $232,000. The court concluded that this figure was greater than the actual loss caused by Sanders (which, according to the presentence report was $76,767.69), and therefore calculated Sanders’s sentence based on this $232,000 intended loss.
The majority opinion concludes that the district court erred in using the $232,000 figure to determine Sanders’s sentence. The majority opinion bases this conclusion in part on the fact that there was no reference in Sanders’s indictment to the $232,000 loan. The opinion thereby appears to assert that, when the district court calculates a defendant’s sentence pursuant to § 2F1.1, the court can never consider offenses beyond those charged in the indictment.
The majority opinion’s assertion is surprising. We have repeatedly reaffirmed that, when a district court sentences a defendant, the court can take into account offenses that were not specifically included in the indictment. See, e.g., United States v. Anderson, 174 F.3d 515, 526 (5th Cir.1999) (“It is not necessary for the defendant to have been charged with or convicted of carrying out the other acts before they can be considered relevant conduct [for sentencing purposes].”); United States v. Singleton, 946 F.2d 23, 26 (5th Cir.1991) (“[A] court, when considering the appropriate sentence under the guidelines, can consider not only crimes that have not been proven beyond a reasonable doubt, but crimes that have not even been charged.”); see also United States v. Powell, 124 F.3d 655, 666 (5th Cir.1997) (concluding that, in determining a defendant’s sentence for federal tax violations, the district court could consider not only the amount of federal tax losses but also the amount of state tax losses, because the latter constituted “relevant conduct”); cf. United States v. Carreon, 11 F.3d 1225, 1241 (5th Cir.1994) (“A district court may base a defendant’s sentence on conduct for which the defendant was acquitted because the government need only establish sentencing facts (unlike the elements of the *530 crime) by a preponderance of the evidence”)-
Indeed, we have applied this rule in the § 2F1.1 context. ,See Anderson, 174 F.3d at 526 (rejecting the defendants’ assertion that “the district court erred in calculating the amount of loss attributable to them [under § 2F1.1], and thus their base offense levels, because the district court included conduct not charged in the superseding indictment as relevant conduct pursuant to U.S.S.G. § 1B1.3”); see also United States v. Burridge, 191 F.3d 1297, 1304-05 (10th Cir.1999) (rejecting the defendant’s assertion that the district court erred in calculating his sentence under § 2F1.1 because the district court included conduct that was not charged in the indictment); United States v. Dickler, 64 F.3d 818, 831 (3d Cir.1995) (stating, in reviewing the district court’s calculation of loss under § 2F1.1, that “[t]he relevant criminal conduct need not be conduct with which the defendant was charged, nor conduct over which the federal court has jurisdiction”) (citations omitted).
That is not to say, of course, that the district court can consider any conduct beyond that charged in the indictment to determine a defendant’s sentence. The district court can consider only prior acts that satisfy two conditions. The conduct must (1) be criminal and (2) qualify as “relevant conduct” under Sentencing Guideline § 1B1.3. Anderson, 174 F.3d at 526; Powell, 124 F.3d at 665; see also United States v. Sotelo, 97 F.3d 782, 799 (5th Cir.1996) (“The Sentencing Guidelines allow the sentencing court to hold a defendant accountable for all relevant conduct.”).
The majority opinion surely would concede that Sanders’s conduct in applying for the $232,000 loan was criminal. As the majority opinion recounts, Sanders submitted the same loan application for the initial $232,000 loan and the $77,500 loan that he ultimately received. Sanders’s failure to report all of his debts and liabilities on that loan application was the “conduct” that led to his convictions for bank fraud and for making false statements to the Small Business Administration (“SBA”). In affirming those convictions, the majority opinion clearly recognizes that Sanders’s conduct in filling out the loan application (for both the $232,000 loan and the $77,500 loan) was “criminal.”
Therefore, the question of whether the district court could consider the $232,000 loan at sentencing turns on whether it qualifies as “relevant conduct” under § 1B1.3. Under that provision, “relevant conduct” includes “all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction.” U.S. Sentencing Guidelines Manual § lB1.3(a)(2). The commentary to § 1B1.3 further explains that, in order for two offenses to constitute part of a “common scheme or plan,” they must be “substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus oper-andi.” Id., cmt. n.9(A); Anderson, 174 F.3d at 526; Powell, 124 F.3d at 665.
It is not difficult to recognize that Sanders’s conduct constitutes the quintessential example of a “common scheme or plan.” Sanders’ efforts to obtain the $232,000 and $77,500 loans involved most, if not all, of the above criteria: “common victims” (the Bank and the SBA); “common purpose” (to obtain funds to purchase a dry cleaning business); and “similar modus operands (submitting the same falsified loan application form). Therefore, Sanders’s application for the $232,000 loan constitutes “relevant conduct,” and was properly *531 considered by the district court at sentencing.[2]
II
The majority opinion next asserts that the district court should not have used the $232,000 figure, because the Government failed to prove by a preponderance of the evidence that Sanders did not intend to repay the loan. The majority opinion concludes that, because Sanders intended to repay the loan, the district court should not have used Sanders's “intended loss” at all. Instead, the court should have calculated his sentence based on the “actual loss” that he caused. See United States v. Tedder, 81 F.Sd 549, 551 (5th Cir.1996) (“Where the defendant intends to repay the loans, then actual loss, rather than intended loss, is the appropriate basis for calculating loss under § 2F1.1.”); United States v. Henderson, 19 F.3d 917, 928 (5th Cir.1994) (“If [the defendant] intended to repay the banks on his loans, the district court should not have used intended loss as the basis for sentencing.”).
The majority opinion purports to recognize that the calculation of loss under § 2F1.1 is a factual finding that this Court reviews for clear error. See United States v. Morrow, 177 F.3d 272, 301 (5th Cir.1999) (noting that “[t]he district court’s calculation of loss under § 2F1.1 is a finding of fact reviewable only for clear error”); Tedder, 81 F.3d at 550; United States v. Hill, 42 F.3d 914, 919 (5th Cir.1995). The majority opinion also appears to acknowledge that the district court’s determination that Sanders did not intend to repay the $232,000 loan was a finding of fact, subject to review only for clear error.
Indeed, the majority opinion even recites the very deferential nature of our review in § 2F1.1 cases. As the majority opinion states, we affirm the district court’s sentencing determination as long as the court’s findings of fact are “plausible in light of the record as a whole.” United States v. Edwards, 303 F.3d 606, 645 (5th Cir.2002) (“In order to satisfy this clear error test all that is necessary is that the finding be plausible in light of the record as a whole.”) (internal quotation marks omitted) (emphasis added); see also United States v. Lopez, 222 F.3d 428, 437 (7th Cir.2000) (“The burden of proof on appealing a district court’s loss calculation requires the defendant to show that the determination was not only inaccurate but outside the realm of permissible computations.”) (internal quotation marks omitted) (emphasis added).
The majority opinion, however, after reciting the proper standard, then goes on to apply anything but clear error review. The opinion does not (in accordance with a clear error standard) examine the evidence as a whole to determine whether that evidence might support the district court’s factual finding. Cf. Morrow, 177 F.3d at 301 (“Given this [clear error] standard of review, the only question we must address is whether the record supports the district court’s determination that the defendants did in fact intend to inflict a loss in the total amount of the fraudulently obtained loans.”). Instead, the majority opinion (in accordance with a de novo standard) examines each piece of evidence separately, explaining why that evidence — standing alone — cannot support the district court’s decision.[3] The majority opinion thereby *532 effectively turns a clear error standard of review into a de novo standard.
A single example illustrates this point. The majority opinion examines the Government’s contention that Sanders’s failure to disclose his financial problems on his loan application indicates a lack of intent to repay the debt. The opinion rejects this argument, stating that “Sanders failure to disclose known debt ... does not in-and-of-itself make plausible the assertion that he intended to not repay either all or part of the $232,000.” The majority opinion mischaracterizes the question before this Court. The issue is not whether a particular piece of evidence “in-and-of-itself’ supports the district court’s decision. Instead, the question is whether that evidence, in light of the record as a whole, supports the district court’s factual determination that Sanders did not intend to repay the debt. See Edwards, 303 F.3d at 645; cf. Fed.R.Evid. 401 (noting that “ ‘[rjelevant evidence’ means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence”).
If the majority were to examine the above evidence in light of the record as a whole, as we must under the clear error standard of review, the majority would see that the district court’s determination was indeed “plausible.” The evidence at trial showed that Sanders was well aware of his precarious financial condition; for that very reason, he intentionally hid his financial problems from the Bank when he applied for the loan. That evidence would support a conclusion that, when Sanders applied for the loan, he did not believe he would be able to repay the debt (and, thus, did not intend to repay the debt). The evidence at trial also suggested that Sanders was not particularly honest or forthcoming with respect to financial matters. Not only did he make material misrepresentations on his bank loan applications, but he also failed to disclose information on his bankruptcy petition.[4] That evidence could have led the district court to discount Sanders’s representations that he did in fact intend to repay the loan. In sum, the district court could have inferred from Sanders’s pattern of dishonesty in financial transactions, combined with Sanders’s clear awareness of his own financial troubles, that when Sanders applied for the $232,000 loan, he did not believe he could (and did not intend to) repay the debt.
The evidence produced at trial, when viewed as a whole, indicates that the district court’s determination (that Sanders did not intend to repay the $232,000 loan) was at least plausible. Indeed, in my opinion, the evidence suggests that the district court’s factual finding was correct. As a result, the district court properly used the $232,000 figure to determine Sanders’s sentence.
The majority opinion presents no valid reason for reversing the district court’s sentencing determination in this case. Therefore, I respectfully dissent.

. As the majority opinion recites, Sanders never in fact received the $232,000 loan. *529 Sanders requested the money to purchase a dry cleaning establishment, and the Bank approved the loan. At the last minute, however, the seller pulled out of the deal, because of environmental problems with the facility. Sanders later found a second (and less expensive) diy cleaning business, and applied for another loan. The Bank approved a $77,500 loan, again relying on Sanders’ claims that his finances were stable. Sanders’s indictment for bank fraud referred specifically to this second loan.

. Indeed, it might have been error for the district court not to consider the $232,000 loan. See United States v. Bennett, 37 F.3d 687, 694 (1st Cir.1994) (concluding that the district court erred in calculating the amount of loss under § 2F1.1 because the court failed to include all "relevant conduct”).

. Indeed, much of the discussion in the majority opinion seems more concerned with *532 explaining the fallacies in the Government’s arguments than with determining whether the evidence supports the district court's decision. The fact that some of the Government's contentions "make[] no sense” may indicate that the Government should spend more time refining its arguments, but does not suggest that there is no evidence to support the district court's factual determination.

. In addition, the evidence suggested that Sanders may have filed a fraudulent worker's compensation lawsuit.